APPRIVA SHAREHOLDER LITIGA-
TION COMPANY, LLC, Plaintiff
Below, Appellant,

v.

EV3, INC., a Delaware corporation f/k/a
Microvena Corporation; ev3 Sunny-
vale, Inc., a California corporation,
f/k/a Appriva Medical Inc., Defendants
Below, Appellees.

and

Michael D. Lesh, M.D., Plaintiff
Below, Appellant,

v.

Appriva Medical, Inc., a California Cor-
poration; Microvena Corporation, a
Minnesota corporation; ev3, Inc., a
Delaware corporation; Warburg, Pin-
cus Equity Partners, L.P., a Delaware
limited partnership; Warburg, Pincus
Netherlands Equity Partners I, C.V., a
Netherlands limited partnership;
Warburg, Pincus Netherlands Equity
Partners II, C.V., a Netherlands limit-
ed partnership; Warburg, Pincus
Netherlands Equity Partners III, C.V.,
a Netherlands limited partnership;
Warburg, Pincus LLC, a New York
limited liability company; Vertical
Fund I, L.P., a Delaware limited part-
nership; Vertical Fund II, L.P., a De-
laware limited partnership; and Paul
Buckman, Defendants Below, Appel-
lees.

Nos. 470, 2006, 623, 2006.

Supreme Court of Delaware.

Submitted: Sept. 5, 2007.
Decided: Nov. 1, 2007.

Jeffrey S. Goddess, Esquire, Rosenthal, Monhait & Goddess, Wilmington, Delaware; Robert A. Goodin (argued) and Francine T. Radford, Esquire, Goodin, MacBride, Squeri, Ritchie & Day, LLP, San Francisco, California; and Kirk B. Hulett, Esquire, Hulett Harper Stewart, LLP, San Diego, California, for appellant, Michael D. Lesh.

Jeffrey L. Moyer, Esquire and Kelly E. Farnan, Esquire, Richards, Layton & Finger, Wilmington, Delaware; Paul H. Dawes, Esquire, Darius C. Ogloza (argued) and Christopher W. Vincent, Latham & Watkins, San Francisco, California, for appellant, Appriva Shareholder Litigation Company, LLC.

Daniel V. Folt, Esquire and Matt Neiderman, Esquire, Duane Morris, LLP, Wilmington, Delaware; Matthew A. Taylor, Esquire (argued), James L. Beausoleil, Jr., Esquire, Seth A. Goldberg, Esquire and Christina E. Norland Audigier, Esquire, Duane Morris, LLP, Philadelphia, Pennsylvania; and Jeffrey J. Bouslog, Oppenheimer, Wolff & Donnell, LLP, Minneapolis, MN, for appellees, Appriva Medical, Inc., et al.; ev3, Inc.; and ev3 Sunnyvale, Inc.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

HOLLAND, Justice.

This litigation arises out of the acquisition of Appriva Medical, Inc. by Microvena Corporation. Two separate lawsuits were filed in the Superior Court. One was filed by Dr. Michael Lesh, the largest former holder of Appriva Medical Shares (the "Lesh Action"). The second was filed by Appriva Shareholder Litigation Company ("ASLC"), a California LLC formed by former shareholders of Appriva, including Erik van der Burg (the "ASLC Action"). The complaints in both cases were dismissed by different judges of the Superior Court on the same ground: that the plaintiffs lacked standing to prosecute their respective actions separately and were contractually obligated to prosecute their claims jointly.[1] This Court entered an order consolidating the challenges to the two Superior Court judgments for purposes of appeal.

### Issues and Holdings

In this consolidated appeal, we address four issues: first, whether ASLC's motion to dismiss was properly considered under Rule 12(b)(6) as opposed to Rule 12(b)(1); second, whether the Superior Court procedure in the ASLC Action was proper when it converted the ev3's motion to dismiss into one for summary judgment; third, whether the Rule 12(b)(6) dismissal in the Lesh Action was proper; and fourth,

---

1. *Lesh v. Appriva Med. Inc.*, C.A. No. 05C–05–218, 2006 WL 2788183 (Del.Super. June 15, 2006); *Lesh v. Appriva Med. Inc.*, C.A. No. 05C–05–218, 2006 WL 3240753 (Del.Super.Oct. 31, 2006)(order denying motion for reargument); *Appriva S'holder Litig. Co., LLC v. ev3, Inc.*, C.A. No. 05C–11–208, 2006 WL 2555348 (Del.Super.Aug. 24, 2006) (Memorandum Opinion).

whether under Rule 17, the plaintiffs in both actions should have been granted leave to amend their complaints before dismissal.

In this opinion, we hold that where the issue of standing is related to the merits, a motion to dismiss is properly considered under Rule 12(b)(6) rather than 12(b)(1). In the ASLC Action, we hold that the Superior Court committed reversible error by converting the Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment without giving ASLC notice and an opportunity to present pertinent evidentiary material. In the Lesh Action, we hold that the Superior Court committed reversible error because, in deciding a Rule 12(b)(6) motion to dismiss, the trial court cannot choose between two differing interpretations of ambiguous documents. Finally, if after considering extrinsic evidence upon remand, the Superior Court still determines that van der Burg and Lesh do not have standing unless they act in concert, we hold that the plaintiffs in both actions are entitled to an opportunity to cure any defects pursuant to Superior Court Rule 17.

### Background

Appriva Medical, Inc. ("Appriva"), developed the Percutaneous Left Atrial Appendage Transcatheter Occlusion device ("PLAATO"), to prevent strokes in certain atrial fibrillation patients. On July 15 2002, Appriva and Microvena Corporation ("Microvena") entered into an Agreement and Plan of Merger (the "Merger Agreement"), whereby Microvena acquired all the rights and interests in PLAATO. The defendant, ev3, Inc., a Delaware corporation, later assumed the obligations of Microvena.

Under the Merger Agreement, and the related Shareholder Representative Agreement dated August 10, 2002 (the "Shareholder Agreement" or "SRA"), Lesh and another former Appriva shareholder, Erik van der Burg ("van der Burg"), were appointed the "Shareholders' Agent" by the shareholders of Appriva, to jointly act as their agent and attorney-in-fact. Sections 1.1 and 2.3 of the Shareholder Agreement each contain language that requires the defendants Lesh and van der Burg to act jointly in their capacity as shareholder representatives. Those provisions, among others, are the subject of this dispute and are argued by both plaintiffs to be ambiguous concerning their entitlement to pursue their separate litigation tracks.

### The Lesh Action

On May 20, 2005, Lesh, unilaterally commenced the Lesh Action in the Superior Court of Delaware, New Castle County, C.A. 05C–05–218, on his own behalf as a shareholder, and on behalf of certain other shareholders as a Shareholder Representative. On August 8, 2005, the defendants in the Lesh Action moved to dismiss Lesh's complaint under Rule 12(b)(6). Besides arguing that Lesh's allegations of breach of contract and common law and statutory fraud were deficient, the defendants asserted that the plain terms of the Merger Agreement and the SRA precluded Lesh's standing: (i) as an individual shareholder of Appriva, because the shareholders had irrevocably relinquished the right to "act independently and other than through the Shareholder Representatives" in bringing an action under the Agreement, and (ii) as a Shareholder Representative, because Lesh did not act "jointly" and "together" with van der Burg in filing the Lesh Action.

In an opinion dated June 15, 2006, a Superior Court judge granted the defen-

dants' motion to dismiss the Lesh Action.[2] The Superior Court held that Lesh, "as the party invoking the jurisdiction of a court, has the burden of proof and persuasion as to the existence of standing," and that Lesh fell "far short of carrying his burden demonstrating that he has standing to sue either as a shareholder representative or in his individual capacity." The Superior Court explained:

The Merger Agreement, explicitly and unambiguously states that Lesh and van der Burg are to jointly act as the agent for all shareholders with respect to the taking of any and all actions and the making of any decisions required or permitted to be taken by the Shareholders' Agent under the Merger Agreement. The claims asserted in this action arise under the Merger Agreement. Therefore, the Court finds that Lesh cannot sue as a shareholder representative without van der Burg.

Moreover, the Court finds that Lesh cannot sue in his individual capacity. At the hearing, Lesh never claimed that the Defendants fraudulently induced him to agree specifically to Section 1.1(c) of the SRA or Section 15.5 of the Merger Agreement. Rather, he claimed that the entire document was the product of fraudulent behavior and that but for the fraud the Agreements would not have been entered. In short, the Court finds that the claim of fraud actually bears upon the entire agreement and upon the activities of the Defendants' in general, not upon a particular clauses within the Merger Agreement or the SRA.

On June 28, 2006, Lesh filed a motion for reargument, asserting that the Superior Court had erroneously held that Lesh's pleading of "a contract claim was fatal to his ability, or standing, to assert the tort/fraud claims individually." By order dated October 31, 2006, the Superior Court denied Lesh's motion for reargument, explaining that it "did not grant Defendants' motion because Plaintiff's pleadings contained 'alternate theories,'" but rather because "[t]he documents that control the rights of the former Shareholders of Appriva Medical, Inc. and that govern the authority of the Shareholder Representatives preclude Plaintiff from establishing standing."[3] The Superior Court reasoned:

The Shareholder Representatives, Lesh and van der Burg, were fully empowered by the Shareholder Representative Agreement ("SRA"). However, both the [Merger] Agreement and the SRA prohibit Lesh from acting independently from van der Burg. As Lesh and van der Burg each filed his own lawsuit, the Shareholder Representatives have not acted jointly as authorized by the Agreement and SRA. Thus, after a careful review of this matter, the Court determines that it will not hear reargument limited to the issue of Plaintiff's standing to sue in his individual capacity.

Relying upon Sections 15.5 of the Agreement and Sections 1.1(a)-(c) and 2.3 of the SRA, the Superior Court concluded that "[t]he former Shareholders of Appriva, including Lesh, irrevocably relinquished and irrevocably and exclusively delegated their rights to act independently in bringing claims under the Agreement."

### The ASLC Action

On November 21, 2005, Apprival Shareholder Litigation Company, LLC ("ASLC") commenced the ASLC Action on

---

**2.** *Lesh v. Appriva Med. Inc.*, C.A. No. 05C–05–218, 2006 WL 2788183 (Del.Super. June 15, 2006).

**3.** *Lesh v. Appriva Med. Inc.*, C.A. No. 05C–05–218, 2006 WL 3240753, at *4 (Del.Super.Oct. 31, 2006).

behalf of certain shareholders, including van der Burg, who had purportedly assigned to ASLC their rights to act independently in bringing claims under the Agreement.[4] Like Lesh, ASLC alleged that ev3 purportedly breached the Agreement's Milestone provisions and that Appriva's acceptance of the merger had been procured through misrepresentations.

On January 31, 2006, ev3 moved to dismiss ASLC's claims pursuant to Rule 12(b)(6). Besides arguing that ASLC's allegations of breach of contract and misrepresentations were deficient, ev3 asserted that the plain and unambiguous terms of the Agreement and the SRA precluded ASLC's standing: (i) as the assignee of its members' rights to act independently in bringing claims under the Agreement, because such rights had been "irrevocably and exclusively delegated" to the Shareholder Representatives and, therefore, could not have been assigned to ASLC; (ii) as the assignee of van der Burg's right to bring claims under the Agreement as a Shareholder Representative, because ASLC had not acted "jointly" and "together" with Lesh in commencing the ASLC Action; and/or (iii) because ev3 had not consented to the purported assignment to ASLC of the rights of its members—van der Burg and the three institutional Shareholders—to bring claims under the Agreement.

In an opinion dated August 24, 2006, a different Superior Court judge converted the Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment and dismissed the ASLC Action.[5] The Superior Court held that "ASLC has not demonstrated it has standing to bring this action." Like the decisions dismissing Lesh's complaint and denying Lesh's motion for reargument, the ASLC decision was based on the terms of the Merger Agreement and the SRA. The second Superior Court judge held that, "[o]n the Merger Agreement alone, ASLC has not met its burden to show its standing." "First, the agreement appoints Lesh *and* van der Burg as Shareholders' Agent. Second it requires them to act in concert. ASLC's complaint manifestly shows they have not and it makes no pretense that they have done so." Quoting Section 1.1(a)-(c) of the SRA in its entirety, the Superior Court concluded, "[t]he Shareholders Agreement contains provisions which also but independently, undercut ASLC's claims of standing."

### The Parties' Contentions

ASLC argues that the Superior Court's treatment of its motion to dismiss was procedurally incorrect. ASLC contends that the Superior Court committed reversible error by considering ev3's challenge to its standing as a plaintiff under Rule 12(b)(6), rather than 12(b)(1).[6] According

4. ASLC describes itself as the "assignee, for purposes of collection, of certain former shareholders in, and officers of Appriva Medical," and further identifies itself as:

> A limited liability company organized and existing under the laws of the State of California, with its principal offices in the San Francisco Bay Area. The Members of ASLC are certain former shareholders of Appriva Medical, Inc. ("Appriva"), including a former officer and shareholder representative under the merger agreement, Erik van der Burg, as well as three institutional investors, each of whom formerly held stock in

> Appriva immediately prior to the merger transaction described herein. ASLC was formed on or about August 18, 2005, for the primary purpose of collecting for its members claims against defendants arising from, and relating to, the July 2002 merger.

5. *Appriva S'holder Litig. Co., LLC v. ev3, Inc.*, C.A. No. 05C–11–208, 2006 WL 2555348, at *1 (Del.Super.Aug. 24, 2006).

6. Rule 12(b) of the Superior Court Rules of Civil Procedure states:

> **(b) How Presented.** Every defense, in law or fact, to a claim for relief in any pleading,

to ASLC, that procedural error caused the Superior Court to improperly convert the defendant's motion to dismiss into one for summary judgment. Alternatively, ASLC argues that even if standing was appropriately challenged under Rule 12(b)(6) and conversion to summary judgment was proper, the conversion procedure itself was defective because the Superior Court failed to provide ASLC with notice and an opportunity to be heard before deciding the converted motion.

The appeal in the Lesh Action arises out of the Superior Court's Rule 12(b)(6) dismissal of his complaint based on lack of standing to assert his claims. In the Lesh Action, a different Superior Court judge held that Lesh did not have standing to sue either individually or as a shareholder representative, because under the Merger Agreement and the SRA, Lesh lacked the ability to act independently of the other shareholder representative, van der Burg. On appeal, Lesh argues that the Superior Court erred in two respects: first, by dismissing his case without considering extrinsic evidence concerning the alleged standing ambiguities in the agreement, and second, by holding that the agreement precluded his fraud and securities claims because, if fraud induced the agreements,

those contracts (induced by fraud) cannot divest him of his right to sue on his own behalf.

The defendants contend that the Merger Agreement and SRA provide that the two former shareholders of Appriva Medical must act in concert when undertaking actions such as these, and that both actions were properly dismissed because each was not brought by both shareholders, but by only one of them. The defendants in the ASLC Action also contend that the Merger Agreement bars assignment of the ASLC members' right to act independently in bringing their claims without the defendants' prior written consent.

Lesh and ASLC both respond that, irrespective of each Superior Court judge's conclusion that they lack standing to pursue their claims, each Superior Court judge should have given the appellants an opportunity to amend their complaints by substituting the appropriate party in interest, as required by Superior Court Civil Rule 17.

### Rule 12(b)(6) Decides Standing

Initially, we must decide whether the issue of standing is properly challenged under Rule 12(b)(1) or Rule 12(b)(6). That question has divided federal[7] and state

whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) Lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. If a pleading sets forth a claim for relief to which an adverse party

is not required to serve a responsive pleading, the adverse party may assert at the trial any defense in law or fact to that claim for relief. If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleadings to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

7. *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 78 n. 5 (3d Cir.2003)(noting the unsettled nature of the merits/jurisdictional question).

courts.[8] Some federal courts analyze the issue of standing as a jurisdictional question,[9] while others treat it as testing the sufficiency of the claim under 12(b)(6).[10] The difference in approaches seems to arise where, as here, the jurisdictional facts are intertwined with facts central to the merits of the dispute.

ASLC argues that motions to dismiss based on a plaintiff's lack of standing should be treated as a challenge to the Superior Court's subject matter jurisdiction under Rule 12(b)(1) and not as a failure to state a claim under Rule 12(b)(6). Although both defenses may result in dismissal, whether a motion to dismiss is based upon subject matter jurisdiction or upon failure to state a claim is a question

having important implications. "First, because subject matter jurisdiction is non-waivable, courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt."[11] Second, some courts have held, based on the express language of 12(b), that conversion to summary judgment is unavailable under 12(b)(1).[12] Other courts that have not expressly disallowed conversion permit a trial court to consider matters outside the pleadings without being compelled to convert a motion to dismiss into a motion for summary judgment.[13] The distinction is also important to a plaintiff's burden of proof.[14]

Some federal district courts have treated standing as a matter distinct from, and unrelated to subject matter jurisdiction. For example, in concluding that questions

**8.** *Taylor v. Maile,* 142 Idaho 253, 127 P.3d 156, 160 (2005) quoting *Young v. City of Ketchum,* 137 Idaho 102, 44 P.3d 1157, 1159 (2002)("Where a case has been dismissed because of lack of standing, this Court must examine 'whether Plaintiffs have sufficiently alleged the requisite elements of standing in their complaint to survive a 12(b)(6) motion to dismiss.' "); *Schulz v. State,* 731 N.E.2d 1041, 1043 (Ind.Ct.App.2000)("An allegation that a party lacks standing is properly filed under Ind. Trial Rule 12(B)(6)."); *Doe v. Governor,* 381 Mass. 702, 412 N.E.2d 325, 327 (1980)(standing may be properly raised under 12(b)(1) or 12(b)(6)).

**9.** *Hawkins v. Wayne Twp. Bd. of Marion County, IN,* 183 F.Supp.2d 1099 (S.D.Ind.2002)("A challenge to standing ordinarily should not be treated as an invitation to consider the merits of the plaintiff's claim."); *Tasini v. New York Times Co.,* 184 F.Supp.2d 350 (S.D.N.Y. 2002)("An objection to standing is properly made on a 12(b)(1) motion.").

**10.** *Clevenger v. First Option Health Plan of New Jersey,* 208 F.Supp.2d 463 (D.N.J.2002) citing *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406 (3d Cir.1991)("Although a challenge to standing gives rise to a question of the court's subject matter jurisdiction, the proper standard to be applied to the standing issue is that of a motion under 12(b)(6).").

**11.** *Nesbit v. Gears Unlimited, Inc.,* 347 F.3d 72, 76–77 (3d. Cir.2003).

**12.** *See, e.g., Gordon v. Nat'l Youth Work Alliance,* 675 F.2d 356, 363 (D.C.Cir.1982)("the impropriety of transforming Rule 12(b)(1) motions into summary-judgment motions is well-settled").

**13.** *See, e.g., Adkins v. Rumsfeld,* 450 F.Supp.2d 440, 444–445 (D.Del.2006)(considering a factual challenge under Rule 12(b)(1), the "Court is not confined to the allegations of the complaint" and "may consider evidence outside the pleadings, including affidavits, depositions and testimony, to resolve any factual issues bearing on jurisdiction.").

**14.** "Unlike the standards employed in Rule 12(b)(6) analysis, the guidelines for the Court's review of [a] Rule 12(b)(1) motion are far more demanding of the non-movant. The burden is on the Plaintiffs to prove jurisdiction exists. Further, the Court need not accept Plaintiffs factual allegations as true and is free to consider facts not alleged in the complaint." *Phillips v. County of Bucks,* C.A. No. 98–6415, 1999 WL 600541, at *1 (E.D.Pa. Aug. 9, 1999) (citations omitted).

of standing are properly decided under 12(b)(6), one court held:

> [S]tanding and subject matter jurisdiction are separate questions. While standing, which is an issue of justiciability, addresses the question whether a federal court may grant relief to a party in the plaintiff's position, subject matter jurisdiction addresses the question whether a federal court may grant relief to any plaintiff given the claim.[15]

Stated differently, where a party is not arguing that the court lacks the authority to grant the relief requested to any plaintiff (i.e., lacks subject matter jurisdiction), but rather is arguing that the court cannot grant relief to these particular plaintiffs, the motion is more properly decided under Rule 12(b)(6) because the plaintiff has failed to plead a necessary element of a cognizable claim, not because the court does not have jurisdiction.[16]

Nevertheless, both federal and state courts that treat standing as a subject matter issue have held that "where the jurisdictional facts are intertwined with the facts central to the merits of the dispute, it is the better view that ... the entire factual dispute is appropriately resolved only by a proceeding on the merits."[17] For example, a determination concerning a "numerical threshold or statutory prerequisite to coverage under a federal statute is deemed to be a question related to the merits of the claim, rather than a condition of subject matter jurisdiction."[18] By analogy, the interpretation of a contract as a prerequisite to appellants' standing is also a determination involving the merits.

In one case, the Third Circuit remanded a contract matter after the trial court had dismissed the complaint for lack of subject matter jurisdiction.[19] There, a non-citizen plaintiff sued a manufacturer for breach of contract. The defendants moved to dismiss, claiming first, that the contract did not exist; and second, that if any agreement did exist, the court lacked jurisdiction because the contract was between the plaintiff and the defendant's foreign subsidiary. Agreeing with the defendant, the trial court found that it lacked subject matter jurisdiction over the contract. The Third Circuit found that the defendant's motion raised a merits issue, not one of subject matter jurisdiction, and remanded the case, stating that, "[s]imply put, by finding that there was no contractual relationship between the parties, the District Court was determining the merits of the case."[20]

■ Similarly, in this consolidated appeal, both of the Superior Court judges tested the sufficiency of the complaints by relying upon the language of the contract documents to conclude that the plaintiffs did not have standing to bring their separate claims. The record reflects that in reaching that result, both of the Superior Court judges evaluated the merits of the relevant provisions of the Merger Agreement and the SRA to determine that there was no ambiguity. We hold that, where,

---

**15.** *Vitanza v. Bd. Of Trade of the City of New York, Inc.*, No. 00 CV 7393, 2002 WL 424699, at *5 n. 10 (S.D.N.Y. Mar. 18, 2002) citing *Rent Stabilization Ass'n of New York v. Dinkins*, 5 F.3d 591, 594 n. 2 (2d Cir.1993).

**16.** *Id.*

**17.** *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d at 78 n. 5.

**18.** James W. Moore et. al, *Moore's Federal Rules Pamphlet* § 12.4[1][a] (2006).

**19.** *Sookhoo v. Becton Dickinson & Co.*, 104 Fed.Appx. 825 (3d Cir.2004).

**20.** *Id.* at 827.

as here, the issue of standing is so closely related to the merits, a motion to dismiss based on lack of standing is properly considered under Rule 12(b)(6) rather than Rule 12(b)(1).

### Conversion Without Notice Erroneous

■ For the reasons stated above, we conclude that the Superior Court properly considered ev3's challenge to ASLC's standing under Rule 12(b)(6) for failure to state a claim. In the ASLC Action, however, the Superior Court converted that 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. ASLC argues that the Superior Court's conversion procedure was defective because it did not afford the parties adequate notice or a reasonable opportunity to respond, as required by Rule 56.

Federal courts addressing the issue have found that failure to give adequate notice to the parties before conversion constitutes reversible error.[21] The relevant provision of Superior Court Rule 12(b) is similar to its federal counterpart. Both the Superior Court Rule and the federal rule state:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given

reasonable opportunity to present all material made pertinent to such a motion by Rule 56.[22]

■ Where, as here, the Superior Court's Rules of Civil Procedure closely track the Federal Rules of Civil Procedure, cases interpreting the federal rules are persuasive authority for our construction purposes.[23] Accordingly, in reviewing the Superior Court's decision to convert a motion to dismiss into a motion for summary judgment, we will examine three issues: "[F]irst, whether the materials submitted require conversion; second, whether the parties had adequate notice of the [trial] court's intention to convert; and third, if the parties did not have notice, whether the [trial] court's failure to provide notice was harmless error."[24]

■ The Superior Court held that its consideration of the SRA required conversion. In this appeal, the second part of the analysis—which addresses the issue of adequate notice—is dispositive. Adequate notice allows parties an opportunity to submit evidentiary materials to support or oppose summary judgment and protects opposing parties from what, in effect, is "summary judgment by ambush."[25] Notice must be unambiguous and give the parties a reasonable opportunity to respond.[26] Adequate notice must be express or "otherwise fairly apprise[ ] the parties

21. *Rose v. Bartle,* 871 F.2d 331, 342 (3d Cir. 1989).

22. Fed.R.Civ.P. 12(b) and Del.Super. Ct. R. Civ. P. 12(b)(emphasis added).

23. *Hoffman v. Cohen,* 538 A.2d 1096 (Del. 1988).

24. *In re Rockefeller Ctr. Prop., Inc., Sec. Litig.,* 184 F.3d 280, 287 (3d Cir.1999).

25. *Geco Corp. v. H.D. Smith Wholesale Drug Co.,* C.A. No. 06–0685, 2006 WL 3359652, at *2 (D.N.J. Nov. 17, 2006) citing *In re Bayside Prison Litig.,* 190 F.Supp.2d 755, 760 (D.N.J. 2002).

26. *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.,* 184 F.3d at 288.

of the proposed conversion." [27]

Although some federal courts have held that notice need not be express to meet the "fairly apprised" standard, those decisions emphasize that notice is best provided through a court order or at a hearing.[28] In discussing the "best practices" of conversion, the Third Circuit has stated:

> We believe that it is undesirable in general for a district court to enter summary judgment after receiving briefs and without holding a hearing unless it makes clear in its order that all affidavits and counter-affidavits must be filed with the briefs.... At the least, as a matter of good practice, we believe resort should not be had to [the authorization in Rule 78 for disposition of a motion without a hearing] unless it is made clear beyond all doubt that the parties must present their affidavits and counter-affidavits in addition to whatever facts appear in the pleadings, depositions, answers to interrogatories, and admissions on file.[29]

This Court, when analyzing the issue of notice and the opportunity to present pertinent material under Delaware Chancery Court Rules, has similarly held that:

> [W]hen issues are decided on summary judgment, the parties must have a reasonable opportunity to present all facts pertinent to the motion. This is so because the entire record must be read in the light most favorable to the non-moving party. Since a party opposing summary judgment is both entitled, and expected, to come forward with admissible evidence showing the existence of a genuine issue of material fact, the purport of Chancery Rule 12(b) is manifest. Once the non-movant has been afforded this opportunity, the burden again shifts to the movant to demonstrate the absence of such disputes. Only then may the trial court conclude, based on the entire record, that there is no genuine issue of material fact, and enter judgment as a matter of law. When the Court of Chancery grants summary judgment notwithstanding genuine issues of material fact, this Court must reverse. Consistent with Chancery Rule 12(b), the same result obtains when parties are denied a reasonable opportunity to develop material facts in opposition to such a motion.[30]

Rule 12(b) requires that the trial judge comply with the requirements of Rule 56. Rule 12(b) states that a "motion [to dismiss] shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Rule 56(c) pertinently states that a "motion [for summary judgment] shall be served at least 10 days before the time fixed for the hearing." [31] In addressing the "reasonable opportunity to respond" standard, federal and state courts have found that 10 days notice is minimally appropriate based upon the requirements of Rule 56.[32]

**27.** *Rose v. Bartle*, 871 F.2d at 342.

**28.** *Id.*

**29.** *Id.* at 341.

**30.** *Mann v. Oppenheimer & Co.*, 517 A.2d 1056, 1060 (Del.1986) (citations omitted).

**31.** Del.Super. Ct. R. Civ. P. 56(c).

**32.** *Rose v. Bartle*, 871 F.2d 331, 340; *Singleton v. Ala. Dep't. of Corr.*, 819 So.2d 596 (Ala.2001)("It is also clear that the spirit of Rule 56 requires the same notice and hearing where the court contemplates summary judgment on its own initiative as it does when a party moves for summary judgment; i.e., ten days notice."); *Jones v. Regency Toyota*, 798 So.2d 474 (Miss.2001)(parties must be given 10 days notice once a motion to dismiss is

Any *sua sponte* conversion by the trial judge should be "exercised with great caution and attention to the parties' procedural rights...."[33] Before a motion to dismiss may be converted to one for summary judgment, parties must be given adequate notice and a reasonable opportunity to present pertinent material. Accordingly, and consistent with Rule 56(c), we hold that the Superior Court must give the parties at least ten days notice of its intent to convert a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment.

In this case, ASLC was not afforded adequate notice. The record reflects that the Superior Court did not hold a hearing or issue an order clearly stating its intent to convert the defendant's dismissal motion into a motion for summary judgment. Although the appellees' argue that ASLC had constructive notice of the conversion, the record reflects that the appellees expressly stated in their reply brief on the motion to dismiss that conversion was unnecessary.[34] The appellees also argue that ASLC should have been on notice of the conversion because ASLC argued that the SRA was outside the pleadings and could not be considered by the Superior Court on the motion to dismiss. But, the fact that *both* parties argued *against* conversion, even further underscores that they had no adequate notice that the Superior Court would, *sua sponte,* convert the Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment.

In applying the third part of our analysis, failure to give adequate notice may only be excused where all parties are aware of the true nature of the proceedings and have presented all evidence related to dispositive issues.[35] The record reflects that neither party was on notice of the conversion and thus, had no opportunity to present additional evidence. In fact, ASLC did not learn of the Superior Court's intention to convert the motion to dismiss until the court issued its opinion granting summary judgment. Thus, ASLC had no opportunity, as required by Rule 12(b) and Rule 56 to respond and to present evidence on the converted motion.

An error in converting a Rule 12(b)(6) motion without notice is harmless only where there is "no set of facts on which plaintiffs could possibly recover."[36] The record reflects that both of the designated shareholder representatives, who have the power under the relevant agreements to interpret the terms of the Merger Agreement and the SRA, construed the disputed contract language in those documents as permitting their separate causes of action. Therefore, the Superior Court failed to provide notice and afford ASLC an opportunity to present pertinent evidence regarding the Shareholder Representatives' interpretation of the Merger Agreement and the SRA. Consequently, the summary judgment that was entered must be reversed and the ASLC Action must be remanded to the Superior Court for further proceedings.

converted to a motion for summary judgment).

**33.** 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 136, at 149 (3d ed.2004).

**34.** "Accordingly the SRA should be considered part of the Complaint without converting

this motion into one for summary judgment." Def's Reply Br. on the motion to dismiss.

**35.** *Trustmark Ins. Co. v. ESLU, Inc.,* 299 F.3d 1265, 1268–1269 (11th Cir.2002).

**36.** *Rose v. Bartle,* 871 F.2d 331, 342.

### ASLC Assignment Claim

In the ASLC Action, the defendants also challenged the assignment of van der Burg's rights to ASLC, the litigation company. Alternatively, the defendants argued that ASLC does not have standing to sue because the Merger Agreement prohibits any assignment of rights "without the prior written consent" of the defendants.[37] The defendants argue that the assignment of van der Burg's right to sue was invalid because they did not consent to it. The Superior Court agreed with the defendants' alternative argument and ruled that ASLC did not have standing because it did not receive the requisite consent from the defendants.[38] Upon remand, ASLC should also be permitted to present pertinent extrinsic material on that issue.

### Ambiguity Precludes 12(b)(6) Lesh Action's Dismissal

In the Lesh Action, the Superior Court dismissed the complaint under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, finding that Lesh lacked standing. Specifically, the Superior Court stated that "[t]he former shareholders of Appriva, including Lesh, irrevocably relinquished and irrevocably and exclusively delegated their rights to act independently in bringing claims under the Agreement."[39]

■ Lesh argues that the contract language upon which the Superior Court based its decision is ambiguous and that extrinsic evidence was needed to interpret the contractual terms. Lesh cites *Vanderbilt Income and Growth Associates v. Arvida/JMB Managers, Inc.* for the proposition that "[o]n a motion to dismiss for failure to state a claim, a trial court cannot choose between two differing reasonable interpretations of ambiguous documents."[40] Where the provisions in controversy are reasonably susceptible to different interpretations, ambiguity exists and "[d]ismissal is proper only if the defendants' interpretation is the only reasonable construction as a matter of law."[41]

Section 2.3 of the Shareholder Representative Agreement or SRA provides that:

> the Shareholder Representatives shall together have full power and authority on behalf of the [shareholders] to (i) interpret all of the terms and provisions of this Agreement, the Merger Agreement and the Escrow Agreement; (ii) to the extent of the Escrow Deposit (as defined in the Escrow Agreement) and the total limit of liability set forth in Section 15.2(d) of the Merger Agreement, compromise or settle any claims asserted under the Merger Agreement or the Escrow Agreement or otherwise in connection with the transactions contemplated by the Merger Agreement. . . .

The Merger Agreement provides:

> 15.5 *Shareholders' Agent.* By approving the Merger and adopting and approving this Agreement, each shareholder of the Company has designated, and approved the designation of, Michael

---

**37.** Merger Agreement § 16.1

**38.** *Appriva S'holder Litig. Co., v. ev3, Inc.,* 2006 WL 2555348, *6 (The Superior Court also found that "ASLC's complaint does not state, which it must for purposes of standing, that Lesh was an assignor to it.").

**39.** *Lesh v. Appriva Med. Inc.,* 2006 WL 3240753, *2.

**40.** *Vanderbilt Income & Growth Assoc. v. Arvida/JMB Managers, Inc.,* 691 A.2d 609, 613 (Del.1996).

**41.** *Id.*

Lesh, M.D. and Erik van der Burg to jointly act as the agent for all shareholders of the Company and holders of Vested Options (the "Shareholders' Agent") and as the attorney in fact and agent for and on behalf of the company shareholders and holders of Vested Options with respect to the taking any an [sic] all actions and the making of any decisions required or permitted to be taken by the Shareholders' Agent under this Agreement and the Escrow Agreement, including without limitation the power to (i) arbitrate, resolve, settle or compromise any dispute regarding indemnification claims or matters arising out of the calculation of the Cash Shortfall Amount and the Initial Per Share Amount and (ii) take all actions necessary in the judgment of the Shareholders' Agent for the accomplishment of the foregoing. Each shareholder of the Company and each holder of Vested Options will be bound by all actions taken and all documents executed by the Shareholders' Agent in connection with any of the foregoing matters. In performing the functions specified in this Agreement, the Shareholders' Agent will not be liable to any shareholder of the Company or holder of Vested Options in the absence of fraud or willful misconduct on the part of the Shareholders' Agent. If the Shareholders' Agent shall resign or become unable to fulfill his or her duties as such, then the Person with the then largest interest in the Contingent Payment Obligations who is willing to appoint a new Shareholders' Agent shall be entitled to make such appointment. Expenses of the Shareholders' Agent shall be the obligation of the holders of the Company Shares, provided, however, that the Surviving Corporation will, until the earlier of (i) the achievement of Milestone # 1, or (ii) January 1, 2004, pay on such holders' behalf (up to a maximum of $250,000) to the Shareholders' Agent the actual, reasonable fees of such Shareholders' Agent as such fees are incurred, provided, further, that the Surviving Corporation shall be entitled to deduct any such advanced fees from any Contingent Payment due after the date of any such advance.

Lesh argues that the relevant language of the Merger Agreement and the SRA does not unambiguously prohibit what occurred here, namely, that one Shareholder Representative (van der Burg) elected to form an LLC to fund and pursue an action against ev3 on behalf of some shareholders, while the other Shareholder Representative (Lesh) hired different counsel and sued individually and on behalf of other shareholders. In opposition, the defendants argue the relevant language in the Shareholder Agreement and the Merger Agreement unambiguously provides that the Shareholder Representatives are not permitted to file separate actions on behalf of separate groups of stockholders against ev3 and the other defendants. The Superior Court agreed with the defendant's interpretation of those documents.

It is significant that the Shareholder Agreement contains language expressly providing that the Shareholder Representatives have full power to interpret the terms "of this [Shareholder Representative] agreement and the Merger Agreement." That is, Lesh and van der Burg may interpret the agreements to allow the exercise of their authority for the shareholders in the manner that they deem appropriate. According to the plaintiffs, their interpretation that separate actions are permitted is grounded, in part, upon the wording of the relevant provision stating that the two representatives "together" have full power and authority, implying that the power to sue is divisible between

them.[42] In opposition, the defendants argued and the Superior Court held that "joint action" had a single separate legal meaning by which the plaintiffs were prohibited from pursuing these actions, and that "even if the court were to consolidate the [two] cases pursuant to Superior Court Civil Rule 42, the parties are still not acting jointly as required by the Merger Agreement."

■ The issue of standing is "concerned only with the question of who is entitled to mount a legal challenge."[43] Lesh and van der Burg each have alleged his own standing to maintain a separate action, individually and as agent and attorney-in-fact for shareholders who were listed in their respective complaints. Their capacity to maintain these separate actions and defendants' arguments to the contrary depend on the parties' interpretations of the controlling documents. If there is more than one reasonable interpretation of a disputed contract term, consideration of extrinsic evidence is required to determine the meaning the parties intended. In *Klair v. Reese*,[44] this Court held:

> In interpreting an integrated agreement, attention is directed to the meaning of the written terms in light of the surrounding circumstances. As long as

the court is aware that doubts and uncertainty lurk in the meaning and application of agreed language, it will consider testimony pertaining to antecedent agreements, communications and other factors which bear on the issue. The primary search is for the common meaning of the parties, not a meaning imposed on them by law.[45]

In *Klair*, this Court concluded that the trial court had erroneously interpreted the meaning of a contract term without considering the extrinsic evidence bearing on the issue.[46] The interpretation in *Klair* that excluded consideration of extrinsic evidence was reversed on appeal, because the meaning that the trial court had found "clear" was only one of two reasonable interpretations. "In deciding a motion to dismiss, the trial court cannot choose between two differing reasonable interpretations of ambiguous provisions."[47]

■ The Superior Court's interpretation of the term "joint action" to prohibit separate lawsuits by the two Shareholder Representatives is not the only reasonable interpretation of the Shareholder Agreement. Courts routinely admit extrinsic evidence to interpret contractual terms regarding "joint" activities.[48] The Superior

**42.** "The Shareholder Representatives shall together have full power and authority to represent the Shareholders, and their successors and assigns, within the scope of their appointment pursuant to Section 1, and all action jointly taken by the Shareholder Representatives hereunder shall be binding upon the holders of Company Shares and Vested Options, and their successors and assigns, as if expressly confirmed and ratified in writing by each of them." See Shareholder Representative Agreement § 2.3.

**43.** *Stuart Kingston v. Robinson,* 596 A.2d 1378, 1382 (Del.1991).

**44.** *Klair v. Reese,* 531 A.2d 219, 223 (Del. 1987).

**45.** *Id.*

**46.** *Id.* at 223–24.

**47.** *VLIW Tech., LLC v. Hewlett–Packard Co.,* 840 A.2d 606, 615 (Del.2003). *See also Scott v. Bosari,* C.A. No. 91C–05–060, 1994 WL 682615 (Del.Super.Oct. 26, 1994).

**48.** In *Sekula v. FDIC,* 39 F.3d 448, 453 (3d Cir.1994), the Third Circuit Court of Appeals found that the word "joint" as used in a regulation was ambiguous. "Unfortunately, the RTC's regulation is marred by a textual ambiguity. There is more than one plausible reading of the regulation—one offered by the RTC and another by the Sekulas—and neither is immediately evidence form the words them-

Court, however, summarily rejected the interpretation argued by Lesh and van der Burg, i.e., that the agreement authorizes each of them to assert claims on behalf of those shareholders who have separately chosen to be represented by one of them— without affording either Lesh or van der Burg an opportunity to explain how they had separately reached that conclusion in exercising their express authority to interpret the documents.[49]

In holding that, as a matter of law, ev3's interpretation was the only "reasonable construction" of the contract language, the Superior Court erred where Lesh and van der Burg, had separately arrived at the identical contrary construction of the language of the Merger Agreement and the SRA. Even if the Superior Court considered the defendants' interpretation more reasonable than the plaintiffs', on a Rule 12(b)(6) motion it was error to select the "more reasonable" interpretation as legally controlling.[50] Consequently, the judgment of dismissal in the ASLC Action must be reversed. Upon remand, the Superior Court shall admit extrinsic evidence to ascertain what the parties intended with respect to the Shareholders' Representatives

exercise of authority pursuant to the Merger Agreement and the SRA.

### Lesh's Fraud Allegations

Lesh also argues that ev3 fraudulently induced the Appriva Shareholders into signing the Merger Agreement, and that but for the fraud, he would not have signed either that agreement or the SRA. The appellee contends that Lesh has put the "cart before the horse" by arguing the merits of his position where he has not established standing to sue. The appellee also argues the merits, however, because it relies on the disputed agreements to establish his argument that plaintiffs have no standing.

■■ The entire Merger Agreement may be voidable if Lesh's claim of fraud in the inducement has merit. In deciding a Rule 12(b)(6) motion to dismiss, the Superior Court must take plaintiffs' fraud allegations as true. If, as Lesh alleges, fraud induced the shareholders' assent and the entire Merger Agreement is voidable, it was error for the Superior Court to rely on the SRA to find he lacked standing, since the SRA was dependent upon the allegedly fraudulently induced Merger Agreement. Because this matter must be remanded for

selves." Consideration of extrinsic evidence of the agency's interpretation of the regulation and the intent of Congress was required to properly interpret it. *Id.* Similarly, in *Irby–Northface v. Commonwealth Elec. Co.,* 664 P.2d 557, 559 (Alaska 1983), extrinsic evidence was required in order to determine whether a statute requiring that a joint venture be an Alaska resident in order to qualify for certain bid preferences meant that both parties to the joint venture must be Alaska residents. *See also Fogg v. Wart,* 2006 WL 3716745, \*12, 2006 U.S. Dist. LEXIS 90583, \*34 (D.Or.2006), the court held that "admissible extrinsic evidence creates a genuine issue of material fact as to whether the parties intended the "Pharmacy Joint Venture" to refer solely to the business arrangement being negotiated by Marquis with GHV/Neighbor-Care. Because Section 9 is ambiguous, "the

trier of fact will ascertain the intent of the parties and construe the contract consistent with the intent of the parties."

**49.** That summary rejection is particularly problematic because the issue of standing is so closely related to the merits. In that circumstances, "where the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine v. U.S.,* 704 F.2d 1074, 1077 citing Wright & Miller § 1350, at 558.

**50.** *Vanderbilt Income & Growth Assoc. v. Arvida/JMB Managers, Inc.,* 691 A.2d 609.

a further determination of Lesh's standing under the contracts, Lesh's standing to bring fraud in the inducement claims shall also be reconsidered on a more fully developed record.

### *Rule 17 Requires Leave to Amend*

In both actions, the defendants contend that the plaintiffs are not the real parties in interest. "[A] real party in interest objection closely resembles the defense of failure to state a claim for relief because it presupposes that the plaintiff does not have the substantive right [standing] to enforce the claim he is making."[51] Rule 17 provides plaintiffs with a remedy in such a circumstance. Where, as in these two actions, "the authority of an agent or other party to bring an action is tested, any resulting deficiency is addressed by ... substitution of the real party in interest."[52] Rule 17(a) states that "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest" after a reasonable time has been allowed to permit a substitution.

The purpose of Rule 17 is "to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made."[53] The Superior Court dismissed the Lesh Action and the ASLC Action due to the plaintiffs' lack of standing. Rule 17 requires that the appellants should have been afforded an opportunity to amend their complaints to name the real parties in interest. Thus, if upon remand the Superior Court determines that the assignment to ASLC is invalid or that van der Burg and Lesh do not have standing unless they act in concert, the plaintiffs in both actions are entitled to cure any defects pursuant to Superior Court Rule 17.

### *Conclusion*

The judgments of the Superior Court in the Lesh Action and the ASLC Action are reversed. Both matters are remanded to the Superior Court for further proceedings in accordance with this opinion.

**51.** 6A Wright, Miller & Kane, Federal Practice and Procedure § 1554 (3 ed.2004).

**52.** *BCP Liquidating LLC v. Union Tank Car Co.,* No. 03–52532, 2004 WL 632867, at *3 (Bankr.D.Del. Mar. 30, 2004) quoting *Maritime Inspection Serv. v. Thermo–Valves, Corp.,* No. 90 Civ. 7286, 1992 WL 42238, at *3 (S.D.N.Y. Feb. 25, 1992).

**53.** Fed.R.Civ.P. 17, Advisory Committee Notes (1966).