# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

SECOND RUN, LLC f/k/a WEBATA, LLC )
)
)
Plaintiff, )
)
v. )
)
1WORLDSYNC, INC. )
)
Defendant. )

)
)
)
)
)
C.A. No. N25C-08-068 KMM
CCLD

Submitted: February 9, 2026
Decided: April 24, 2026

*Defendant's Motion to Dismiss – **DENIED***

## <u>MEMORANDUM OPINION AND ORDER</u>

William D. Sullivan (argued), SULLIVAN NIMEROFF BROWN HILL LLC, Wilmington, Delaware; Todd P. Lewis, Brian G. Thomas, CONNER & WINTERS, LLP, Fayetteville, Arkansas, *Attorneys for Plaintiff Second Run, LLC f/k/a Webata, LLC.*

Jared T. Green (argued), ESBROOK P.C., Wilmington, Delaware; Christopher J. Esbrook, Zachary L. Sorman, ESBROOK P.C., Chicago, Illinois, *Attorneys for Defendant 1WorldSync, Inc.*

**Miller, J.**

## I.     INTRODUCTION

Plaintiff Second Run, LLC f/k/a Webata, LLC ("Webata") entered into an asset purchase agreement with Defendant 1WorldSync, Inc. ("1WorldSync"). The agreement contemplated earn-out payments based on contractually defined Annual Recurring Revenue ("ARR") growth of certain Webata assets acquired by 1WorldSync. Webata brings a breach of contract claim arguing 1WorldSync arbitrarily reduced revenue associated with Webata's assets, unilaterally reducing the earn-out payment owed. 1WorldSync seeks to dismiss Webata's claim arguing the parties delegated authority to resolve the dispute to an accounting firm (the "Motion").

In deciding the scope of authority delegated to a third-party decision maker, courts look to the parties' contract. Here, the parties agreed to an accountant true-up mechanism—a form of an expert determination—limited to resolving disputes over earn-out calculations. A review of Webata's claim, however, shows that the dispute is not over a calculation. Rather, the dispute centers on the correct interpretation of ARR as defined in the parties' contract. Because the dispute is broader than an earn-out calculation, the accounting firm does not have the authority to resolve it. Accordingly, 1WorldSync's Motion is **DENIED**.

## II. FACTUAL BACKGROUND[1]

### A. *The APA*

On March 7, 2023, Webata and 1WorldSync entered into an Asset Purchase Agreement ("APA").[2] At the time of the transaction, Webata was "engaged in the business of providing e-commerce product presentation, sales and supply chain, digital shelf, category intelligence, benchmarking, intelligence and marketing and promotion sales and software services (the "Business")."[3]

Under the APA, 1WorldSync acquired most of Webata's assets including REA products—Webata's intellectual property in an e-commerce software and analytics suite.[4] Rather than a one-time payment at closing, the parties agreed to earn-out payments based on ARR growth associated with REA products (the "Deferred Consideration Payments") for each dollar in excess of fiscal year ("FY") 2022.[5]

The parties contemplated Deferred Consideration Payments for 2023 and 2024[6] and defined ARR as "the amount of predictable and recurring revenue components of recurring revenue streams obtained by [1WorldSync] with respect to

---

[1] The facts are derived from the Complaint. D.I. 1 ("Compl.") and the documents it incorporates by reference.
[2] Compl. 5, Ex. A ("APA").
[3] APA § A.
[4] Compl. ¶ 6.
[5] *Id.* ¶ 7.
[6] *Id.*; APA § 2.9.1–2.

the Business (including subscriptions and maintenance revenues) normalized for a single calendar year[.]"[7]

Relevant here, APA Section 2.9.2 governs Deferred Consideration Payments for 2024. It states in part: "[Webata] shall be eligible to receive…Deferred Consideration [Payments]…determined as an amount equal to $1.00 for each $1.00 of ARR at December 31, 2024…in excess of FY 2022 ARR, up to a maximum (taken together with any 2023 Deferred Consideration Payment) of $4,782,000 (the "2024 Deferred Consideration Payment")."[8] There was no 2023 Deferred Consideration Payment due so calculation of the 2024 Deferred Consideration Payment is relatively simple, FY 2024 ARR minus FY 2022 ARR equals 2024 Deferred Consideration Payment (up to a maximum of $4,782,000).

**B.** *The ADR mechanism*

To resolve disputes that arise from the calculation of Deferred Consideration Payments, the parties agreed to an alternative dispute resolution ("ADR") mechanism. Section 2.9.3 requires 1WorldSync to "deliver to [Webata] a statement setting forth in detail Buyer's good faith calculation of the ARR for [FY 2024] and the resulting calculation of the…2024 Deferred Consideration Payment[]" (the "Deferred Consideration Statement").[9] Webata then has 30 days to review the

---

[7] APA at Annex I-1.
[8] *Id.* § 2.9.2.
[9] *Id.* § 2.9.3.

Deferred Consideration Statement, during which 1WorldSync "shall provide, as reasonably requested, by [Webata] and its accountants…reasonable access" to books and records.[10]

Prior to the expiration of the 30-day review period, Section 2.9.4 grants Webata the right to "upon written notice[,]…object to the calculations of the…[FY 2024] Deferred Consideration ARR…and/or the amount[] of [the 2024] Deferred Consideration Payment" ("Objection Notice").[11]  "If [Webata] timely delivers to [1WorldSync] an Objection Notice, [the parties] shall resolve such dispute in accordance with the procedures set forth in Section 2.7.2."[12]

Section 2.7.2, in turn, provides that the parties

> shall negotiate in good faith to resolve such dispute…. Notwithstanding such good faith effort, if [the parties] fail to resolve such dispute within [30] days after [Webata] provides such written notice of dispute to [1WorldSync], the specific matter or matters in dispute will be submitted to an independent, regionally recognized accounting firm mutually selected by [the parties] (the "Accounting Firm"), which firm will make a final and binding determination as to such matter or matters in dispute (and no other matters).[13]

C.    *The parties dispute the 2024 Deferred Consideration Payment*.

For FY 2024, 1WorldSync sold REA products in three configurations: (1) as a stand-alone product; (2) as an "add-on" to existing subscriptions; and (3) as a

---

[10] *Id.* § 2.9.3.
[11] *Id.* § 2.9.4.
[12] *Id.*
[13] *Id.* § 2.7.2.

5

component of a "freemium package."[14]  As alleged by Webata, in February 2025, 1WorldSync "validated" the amount of applicable ARR growth and that growth entitled Webata to a 2024 Deferred Consideration Amount of $1,363,682.[15]  That amount included ARR from each of the three configurations 1WorldSync sold REA products.  Despite that entitlement, and a subsequent demand by Webata for payment,[16] 1WorldSync has refused to make payment.[17]  The basis for 1WorldSync's refusal, and at the center of this litigation, is 1WorldSync's view that revenue resulting from sales of REA products as part of an add-on or freemium package do not count towards calculating ARR, or at a minimum, a discounted percentage should be applied when compared to REA products sold on a stand-alone basis.

## III.  PARTIES' CONTENTIONS

1WorldSync contends Webata's breach of contract claim is ultimately a disagreement concerning the calculation of the 2024 Deferred Consideration Payment, which is contractually delegated to the ADR mechanism.[18]

Webata responds that the dispute is not over a calculation but is one of contract interpretation, outside the scope of the Accounting Firm's authority.[19]  Webata's argument is that it does not challenge the methodology utilized to arrive at the 2024

---

[14] Compl. ¶ 9, Ex. B ("Demand Letter") at 1.
[15] *Id.* ¶¶ 10–11.
[16] *Id.* ¶ 12; *see generally* Demand Letter.
[17] Compl. ¶ 12.
[18] D.I. 12 ("Mot.") at 8–9.
[19] *See generally* D.I. 16 (Answering Brief ("AB")).

6

Deferred Consideration Payment.[20] Instead, it challenges 1WorldSync's interpretation of ARR that 1WorldSync unilaterally applied that had the effect of significantly reducing the resulting Deferred Consideration Payment.[21]

## IV. STANDARD OF REVIEW

A party may move to dismiss a complaint under Superior Court Civil Rule 12(b)(1) for lack of subject matter jurisdiction.[22] Under Rule 12(b)(1), "[t]he Court 'need not accept the plaintiff's factual allegations as true and is free to consider facts not alleged in the complaint.'"[23] The plaintiff bears the burden to prove jurisdiction exists.[24]

"Rule 12(b)(1) is a suitable vehicle for raising arguments about why a court should not exercise…jurisdiction" it otherwise has.[25] Accordingly, courts entertain motions brought under Rule 12(b)(1) that seek dismissal in favor of contracted for alternative dispute resolution.[26] "[A]nd such a motion will be granted where it

---

[20] AB at 8; D.I. 28 (Webata's Supplemental Brief) at 7–8.

[21] AB at 7–8.

[22] Super. Ct. Civ. R. 12(b)(1).

[23] *In re Proton Pump Inhibitors Products Liab. Litig.*, 2023 WL 5165406, at *5 (Del. Super. Aug. 11, 2023) (quoting *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1284 n.14 (Del. 2007)) (cleaned up).

[24] *Appriva S'holder Litig.*, 937 A.2d at 1284 n.14.

[25] *Gandhi-Kapoor v. Hone Capital LLC*, 307 A.3d 328, 342 (Del. Ch. 2023).

[26] *Buzzfeed Media Enterprises, Inc. v. Anderson*, 2024 WL 2187054, at *4 (Del. Ch. May 15, 2024).

appears that as a matter of established doctrine the Court should not exercise its jurisdiction."[27]

## V.    ANALYSIS

### A.    *What is the ADR mechanism?*

"Binding alternative dispute mechanisms fall along a spectrum[.]"[28]  The Court's first task is to determine where along the spectrum the parties' ADR mechanism falls.

> At one end is an arbitration that has the look and feel of a judicial proceeding, except that it is handled privately and with less formality. At the other end is an expert determination in which an expert with technical skills or knowledge makes a determination, largely on its own, and with only limited party input.[29]

Between an arbitration and expert determination is the accountant true-up mechanism, a "beefed-up expert determination."[30]  Where, "[i]n one standard use case, the parties agree that any dispute concerning the values reported in the financial schedules used by the parties to determine the amount of any price adjustment are to be submitted to an independent accounting firm for a final and binding determination."[31]

---

[27] *Id.*
[28] *Paul v. Rockpoint Group, LLC*, 2024 WL 89643, at *10 (Del. Ch. Jan. 9, 2024).
[29] *Archkey Intermediate Holdings Inc. v. Mona*, 302 A.3d 975, 989 (Del. Ch. 2023).
[30] *Id.* at 995.
[31] *Id.* at 991 (internal quotations and citation omitted).

To place a parties' ADR mechanism somewhere on that spectrum, Delaware courts employ the authority test.[32] To do so, courts look to the plain language of the parties' agreement to "examine the nature and scope of the authority that the agreement provides."[33] Here, the parties' ADR mechanism grants the Accounting Firm the authority to make a "final and binding" determination only as to the specific matter(s) raised in the Objection Notice. The Objection Notice itself grants Webata the limited right to object to calculations of the FY 2024 ARR or the 2024 Deferred Consideration Amount. Those features are emblematic of an accountant true-up mechanism. It includes a dispute resolution process for challenging the calculations of a financial statement where the parties—after a negotiation period—submit those disputes to an independent accountant firm for a final and binding determination.[34] That makes clear that the Accounting Firm is not an arbitrator and is thus without the broad legal authority typically designated for arbitration. Accordingly, the ADR mechanism here calls for a beefed-up expert determination by way of an accountant true-up.

**B.** ***Can the Accounting Firm determine the parties' dispute?***

Having determined the role of the Accounting Firm, the Court's next task is to decide whether the Accounting Firm can determine the parties' dispute. The

---

[32] *Id.* at 993; *see also Terrell v. Kiromic Biopharma*, 297 A.3d 610, 617–20. (Del. 2023).

[33] *Archkey*, 302 A.3d at 993.

[34] *See id.* (discussing the typical characteristics of an account true-up mechanism).

parties offer opposing views. 1WorldSync argues that the ARR dispute is ultimately a dispute concerning the calculation of the 2024 Deferred Consideration Payment, thus it is delegated to the Accounting Firm for determination.[35] Webata contends that its allegations are primarily a dispute over contract interpretation, not a calculation.[36] This is because, as alleged, 1WorldSync unilaterally and drastically decreased the 2024 Deferred Consideration Payment by discounting ARR attributable to REA products sales as part of subscription add-ons and freemium packages in contravention of the APA defined ARR.

"In the case of a typical expert determination, the authority granted to the expert is limited to deciding a specific factual dispute concerning a matter within the special expertise of the decision maker, usually concerning an issue of valuation."[37] "That does not mean, however, that an expert has no ability to interpret contract terms."[38] Rather, "[i]t may be necessary for the expert, in order to decide the point which has been referred to him, to decide a disputed point of interpretation of the contract between the parties."[39] Thus, "in each case it is necessary to examine the contract itself in order to decide what the parties intended should be a matter for the exclusive decision of the expert."[40] Delaware courts reject contractual parties'

---

[35] Mot. at 7–9.

[36] AB. at 1, 7–9.

[37] *Penton Bus. Media Holdings, LLC v. Informa PLC*, 252 A.3d, 464 (Del. Ch. 2018) (cleaned up).

[38] *Paul*, 2024 WL 89643, at *11.

[39] *Archkey*, 302 A.3d at 997–98 (internal quotations and citations omitted).

[40] *Penton*, 252 A.3d at 465 (internal quotations and citations omitted).

efforts to escape the authority of third-party decision makers by couching delegable disputes as questions of law.[41]

The parties' grant of authority makes clear that the Accounting Firm has the exclusive authority to determine disputes as to the calculation of the 2024 Deferred Consideration Payment. It is also true that, at a glance, the parties' dispute here is over the calculation of the 2024 Deferred Consideration Payment. But just as couching delegable disputes in law will not allow a party to escape an alternative dispute mechanism,[42] couching a dispute in law as a dispute of fact will not operate to cause this Court to forbear exercising subject matter jurisdiction over a claim.[43]

Here, the crux of the parties' dispute is their competing interpretations of ARR. That is, Webata's contention is not that 1WorldSync miscalculated the FY 2024 ARR—in fact, Webata argues the opposite.[44] Webata's contention is that after 1WorldSync calculated the FY 2024 ARR and "validated the amount" it arbitrarily discounted ARR attributable to sales of REA products as part of an add-on or freemium package.[45] While an expert may be able to interpret a contractual

---

[41] *Stone v. Nationstar Mortgage LLC*, 2020 WL 4037337, at *8 (Del. Ch. July 6, 2020).

[42] *Id.*

[43] *See I Am Athlete, LLC v. IM EnMotive, LLC*, 2024 WL 4904685, at *7 (Del. Super. Nov. 27, 2024); *see also Fortis Advisors, LLC v. Demantic Corp.*, 2022 WL 18359410, at *16 (Del. Super. Dec. 29, 2022) (finding an alternative dispute resolution mechanism inapplicable because the dispute concerned a contested meaning of a contractually defined term, not a "calculation that an accounting firm would be equipped to resolve[.]").

[44] AB at 4–5, 7.

[45] *Id.* at 4–5, 7–8.

provision when deciding a factual dispute, there must be a question of fact to decide. And as 1WorldSync acknowledges "[t]he dispute here turns on the definition and application of the term 'ARR,' which the APA define[s]…."[46]  Here, the parties delegated disputes concerning calculations, they did not delegate disputes where the only question to be answered is the correct interpretation of a contractual term.

The inability to delegate the parties' dispute to the Accounting Firm is further confirmed by the APA's ambiguity as to direct versus add-ons or freemium package sales of REA products.  "A provision in a contract is ambiguous when the provision in controversy is reasonably or fairly susceptible of different interpretations or may have two or more different meanings."[47]  ARR is defined generally to include "the amount of predictable and recurring revenue components of recurring revenue streams obtained by [1WorldSync] with respect to the Business…."[48]  That definition does not differentiate between types of sales, nor does it foreclose such differentiation.  Both parties offer different, but reasonable, interpretations of how the APA intended to treat ARR in this context.  Thus, if the Court followed 1WorldSync's view, the Accounting Firm would be tasked with resolving an

---

[46] D.I. 27 (1WorldSync's Supplemental Brief) at 5.
[47] *BitGo Holdings, Inc. v. Galaxy Digital Holdings, Ltd*. 319 A.3d 310, 323 (Del. 2024) (internal quotations and citations omitted).
[48] APA at Annex I-1.

12

ambiguity in the APA.  That is a task well outside the Accounting Firm's authority to resolve disputes concerning calculations.

## VI.  CONCLUSION

Because the parties' dispute is one that purely concerns the correct interpretation of a contract and is absent a dispute of fact, the Accounting Firm is without authority to decide it.  That conclusion is further confirmed by the ambiguity of the very term that the parties dispute.  Accordingly, 1WorldSync's Motion is DENIED.

**IT IS SO ORDERED**.

/s/Kathleen M. Miller
Kathleen M. Miller, Judge