# COURT OF CHANCERY
## OF THE
## STATE OF DELAWARE

JOSEPH R. SLIGHTS III
VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone: (302) 739-4397
Facsimile: (302) 739-6179

Date Submitted: July 10, 2018
Date Decided: August 10, 2018

Rudolf Koch, Esquire
Sarah A. Clark, Esquire
Ryan P. Durkin, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

William Lafferty, Esquire
John DiTomo, Esquire
Elizabeth Mullin, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
Wilmington, DE 19899-1347

Re: *Fortis Advisors LLC v. Stora Enso AB*
C.A. No. 12291-VCS

Dear Counsel:

This case arises from a contractual dispute between Plaintiff, Fortis Advisors LLC ("Fortis"), and Defendant, Stora Enso AB ("Stora Enso"), under an agreement dated June 18, 2014 (the "Merger Agreement") by which Stora Enso acquired non-party, Virdia, Inc. ("Virdia") (the "Merger"). The Merger Agreement provides for two forms of payment: (1) a $25.27 million purchase price (subject to certain adjustments) to be paid upon closing; and (2) two post-closing payments to be paid only upon the achievement of designated milestones (the "Milestone Payments"). Fortis, as shareholder representative, has filed a complaint in which it alleges that

Stora Enso breached the Merger Agreement by not making the Milestone Payments. More specifically, Fortis alleges that the Merger Agreement bound Stora Enso to a specific performance timeline meant to facilitate its achievement of the two milestones that would trigger the Milestone Payments. According to Fortis, Stora Enso failed to comply with that timeline in breach of the Merger Agreement.

Stora Enso has moved to dismiss Fortis' complaint on the ground that the Merger Agreement unambiguously did not obligate it to perform under any set timeline. According to Stora Enso, because the milestones were not achieved as prescribed in the Merger Agreement, it has no obligation, contractual or otherwise, to make the Milestone Payments. For the reasons that follow, Stora Enso's motion to dismiss must be denied.

## I. BACKGROUND

The following facts are drawn from the allegations in Plaintiff's Verified Amended Complaint (the "Complaint"), documents incorporated therein by reference and those matters of which I may take judicial notice.[1] As I must on a motion to dismiss under Court of Chancery Rule 12(b)(6), I accept as true the

---

[1] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 169 (Del. 2006).

Complaint's well-pled factual allegations and draw all reasonable inferences from these allegations in the light most favorable to Plaintiff.[2]

## A. Parties and Relevant Non-Parties

Plaintiff, Fortis, is a Delaware limited liability company headquartered in San Diego, California.[3] It represents the interests of Virdia's pre-merger Common Stockholders, Option Holders and Warrant Holders (collectively, the "Equity Holders"), and is pursuing this action on their behalf.[4]

Defendant, Stora Enso, is a Swedish private limited liability company with its principal place of business in Stockholm, Sweden.[5] It "is a leading provider of renewable solutions in packaging, biomaterials, wood and paper, with a focus on replacing non-renewable materials."[6]

Prior to the Merger, non-party, Virdia, pursued the business of biorefining, which is the process of "extracting and refining various products from biomass as a

---

[2] *Id.* at 168.

[3] Compl. ¶ 20.

[4] Compl. ¶¶ 1–2.

[5] Compl. ¶ 21.

[6] *Id.*

feedstock or raw material."[7]  As a result of the Merger, Virdia became Stora Enso's

wholly-owned subsidiary.[8]

## B. The Milestones and Other Relevant Contractual Provisions

The parties' dispute regarding the Milestone Payments implicates several

provisions of the Merger Agreement.[9]  I discuss each in turn below.

### 1.  The Milestone Payments

The Merger Agreement, at § 2.14, defines Stora Enso's contingent obligation

to make the Milestone Payments.  Under Section 2.14(a), "[i]f following the Closing

Date and prior to December 31, 2015 . . . the milestones set forth in Annex B-1 [to

the Merger Agreement] shall have been completed, [Stora Enso] shall pay to

[Fortis] . . . $12,000,000,"[10] less certain bonuses owed to former Virdia executives

---

[7] Compl. ¶ 2.

[8] Compl. ¶¶ 1, 31.

[9] Compl., Ex. A ("Merger Agmt.").

[10] The Merger Agreement defines "Closing Date" as "within three (3) Business Days after the last of the conditions set forth in Article VI ['Conditions Precedent'] is satisfied or waived . . . or at such other date, time or place as the parties hereto shall agree in writing." Merger Agmt. § 2.9(a).  The Merger closed on June 19, 2014.  Compl. ¶ 31.

(the "First Milestone Payment").[11]   Under Section 2.14(b), "[i]f following the Closing Date and prior to June 30, 2017 . . . the milestones set forth on Annex B-2 shall have been completed, [Stora Enso] shall pay to [Fortis] . . . $17,300,000" (the "Second Milestone Payment").[12]

Annex B-1 and Annex B-2, in turn, set forth the requirements for achievement of each of the two milestones.  The first milestone ("Milestone 1"), outlined in Annex B-1, required Stora Enso to complete three principal steps by December 31, 2015: (1) the construction and "commission"—defined as "the process of assuring all systems and components are designed, installed, tested, operated and maintained properly"—of a "pilot plant" in Danville, Virginia (the "Danville Pilot Plant"); (2) the completion of three seventy-two-hour extraction campaigns from two biomass feedstocks—sugar cane bagasse and eucalyptus[13]; and (3) the production of three products that meet certain specifications.[14]  The parties understood that the

---

[11] Merger Agmt. § 2.14(a).

[12] *Id.*

[13] Compl. ¶ 36.  One extraction "was aimed at separating hemi-sugars from ligno-cellulosic biomass," while the other "was aimed at separating lignin from cellulose."  Compl. ¶ 25.

[14]  Merger Agmt., Annex B-1.

"centerpiece" of the Danville Pilot Plant would be a piece of equipment called a "Skid," a machine designed to extract certain materials from biomass.[15] As provided in Section 2.14(a), if Stora Enso completed Milestone 1 by December 31, 2015, it would be required to make the First Milestone Payment ($12 million) to Fortis for distribution to the Equity Holders.

The second milestone ("Milestone 2," together with Milestone 1, the "Milestones"), as defined in Annex B-2, required Stora Enso to complete two steps by June 30, 2017: (1) the construction and commission of a "commercial plant" in Raceland, Louisiana (the "Raceland Plant"), and (2) "the production of 7,000 US tons of liquid xylose (a sugar isolated from wood) at a variable cost at or below $650 per ton."[16] If Milestone 2 was completed by June 30, 2017, Stora Enso would be obliged to pay out the Second Milestone Payment ($17.3 million) to Fortis for distribution to the Equity Holders.[17]

---

[15] Compl. ¶ 7. The "Skid" is "an integrated modular system" used "to separate lignin from [] lignocellulosic material." Compl. ¶ 28.

[16] Compl. ¶ 14–15.

[17] Compl. ¶ 2.

### 2. Stora Enso's Merger Agreement Representations

In Section 4.2 of the Merger Agreement, Stora Enso represented that, at the time of execution, it had "the requisite corporate power and authority and ha[d] taken all corporate action necessary to execute and deliver [the Merger] Agreement, *to perform its obligations hereunder* and to consummate the transactions contemplated hereby."[18]  Stora Enso further represented that "[n]o other corporate action . . . [was] necessary to authorize the execution, delivery and performance of [the Merger] Agreement . . . and consummation of the transactions contemplated hereby."[19]

### 3. Merger Agreement § 5.15 and Schedule 5.15

Section 5.15(a) states that Stora Enso "shall conduct the business of [Virdia, post-close,] as provided in the financial and human resource plan attached [to the Merger Agreement] as Schedule 5.15, other than as would, in the good faith belief of [Stora Enso], increase the likelihood that the [M]ilestones set forth on Annex B-1 and Annex B-2 will be achieved, and [Stora Enso] shall not Willfully take any action or omit to take any action in order to avoid paying the Milestone Payments in

---

[18] Merger Agmt. § 4.2(a) (emphasis supplied).

[19] *Id.*

accordance with Section 2.14."[20]   Section 5.15(b) provides that, in the event Stora Enso "materially breaches" Section 5.15(a), "any remaining funds due under the Milestone Payments shall become due and payable in full."[21]

Schedule 5.15, referenced in Section 5.15, contains four tabs.  Tab one, labeled "Summary Headcount," sets forth a chart displaying each step of the milestone process through Milestone 2 with corresponding employee headcounts.[22] Tab two, labeled "Team Assignments," lists employees, their location, as well as current and planned assignments as related to the Milestones.[23]  Tab three, labeled "Virdia Quarterly Budget," depicts Virdia's quarterly budgets during the relevant timeframe.[24]  Finally, Tab four, labeled "Q2_2014 Detail," lists salary, rental and lease costs and other expenses.[25]

---

[20] Merger Agmt. § 5.15(a). The Merger Agreement defines "Willful" as "an act or failure to act by any party with the actual knowledge that the taking of such act or failure to take such act would cause a breach of this Agreement."  Merger Agmt. § 1.1 (defining Willful).

[21] Merger Agmt. § 5.15(b).

[22] Merger Agmt., Schedule 5.15.

[23] *Id.*

[24] *Id.*

[25] *Id.*

### C. Procedural Posture

Fortis initiated this action on May 3, 2016, to recover the First Milestone Payment, asserting Stora Enso failed to achieve Milestone 1 due to material breaches of the Merger Agreement. Fortis filed the now-operative amended complaint on September 27, 2017, alleging the same for Milestone 2 and the Second Milestone Payment. On November 27, 2017, Stora Enso filed its motion to dismiss, pursuant to Court of Chancery Rule 12(b)(6), for failure to state a viable breach of contract claim.

## II. ANALYSIS

Under Court of Chancery Rule 12(b)(6), a complaint must be dismissed if the plaintiff would be unable to recover under "any reasonably conceivable set of circumstances susceptible of proof" based on the facts as pled in the complaint.[26] In considering a motion to dismiss, the court must accept as true all well-pled allegations in the complaint and draw all reasonable inferences from those facts in Plaintiff's favor.[27]

---

[26] *Gen. Motors*, 897 A.2d at 168.

[27] *Id.*

Generally, the interpretation of a contract is a question of law that is suitable for determination on a motion to dismiss.[28] The court may grant a motion to dismiss based on contractual language, however, only if the contractual language is unambiguous—meaning, the language is susceptible of only one reasonable interpretation.[29] "Even if the [] Court considered the defendants' interpretation *more reasonable* than the plaintiffs', on a Rule 12(b)(6) motion, [the Court may not] select the 'more reasonable' interpretation as legally controlling."[30] Thus, to prevail on its motion, Stora Enso must demonstrate that its proffered interpretation of the Merger Agreement is the *only* reasonable interpretation.[31]

---

[28] *Micro Strategy Inc. v. Acacia Research Corp.*, 2010 WL 5550455, at \*5 (Del. Ch. Dec. 30, 2010).

[29] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003) (denying motion to dismiss where contractual provisions were ambiguous); *Kaiser Aluminum Corp. v. Matheson*, 681 A.2d 392, 395 (Del. 1996) (holding that ambiguity exists "when the provisions in controversy are reasonably or fairly susceptible of different interpretations").

[30] *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1292 (Del. 2007) (citing *Vanderbilt Income & Growth Assoc. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609 (Del. 1996)) (emphasis supplied).

[31] *VLIW*, 840 A.2d at 615 ("Dismissal, pursuant to Rule 12(b)(6), is proper only if the defendants' interpretation is the *only* reasonable construction as a matter of law." (emphasis in original)).

As I explain below, Defendant has not proffered the only reasonable interpretation of the contractual provisions in controversy. Consequently, the motion to dismiss must be denied.

### A. Merger Agreement § 4.2 is Ambiguous

Fortis alleges Stora Enso breached Merger Agreement § 4.2 because, at the time Stora Enso made the representations in that section, it had not obtained internal authorization to order and purchase the "Skid," the key piece of equipment required for the timely completion of Milestone 1.[32] As alleged in the Complaint, in order to meet Milestone 1, Virdia "understood that the Skid had to be, and would be, ordered [by Stora Enso] promptly upon the closing of the [M]erger."[33] Because Stora Enso had not obtained internal authorization for the purchase prior to the Merger, it failed to order the Skid promptly. This delay, in turn, caused Stora Enso to fail to meet the Milestone 1 deadlines.[34]

---

[32] Compl. ¶¶ 35–39.

[33] Compl. ¶ 39. Schedule 5.15 "provided for the Skid to be commissioned by the end of June 2015." Tr. of Hr'g Apr. 16, 2018, 16:10–11.

[34] Compl. ¶¶ 50–57.

Stora Enso counters that Section 4.2 is nothing more than a standard corporate authorization provision that simply acknowledged Stora Enso's legal authority to enter into and consummate the Merger.[35] According to Stora Enso, any construction of this provision that would require it to have obtained *pre-closing* authorization for each *post-closing* purchase required for achievement of the Milestones is not reasonable.[36]

There is more than one reasonable construction of Section 4.2. One reasonable construction is, as Stora Enso posits, that Stora Enso merely acknowledged its authority to enter into the Merger and that it had received all necessary approvals to consummate that transaction.[37] Another reasonable construction, however, is that the language in Section 4.2, in light of the particular

---

[35] Def.'s Opening Br. in Supp. of Its Mot. to Dismiss Pl.'s Verified Am. Compl. ("Def.'s Opening Br.") 13.

[36] Def.'s Opening Br. 14.

[37] *See* Lou R. Kling, Eileen T. Nugent & Brandon A. Van Dyke, *Negotiated Acquisitions of Companies, Subsidiaries and Divisions* § 11.04[6] (1992) (2018 update) (explaining that a corporate authorization clause may include language representing that the company has the power and authority "to perform its obligations under th[e] Agreement" or "to perform the transactions provided [in the Agreement]" and that "whether such nuances in language have any meaningful effect will vary from case to case," depending in part "on whether there are ancillary documents of importance").

circumstances, reflected Stora Enso's representation that it had received authorization to order the Skid pre-closing. Specifically, in Section 4.2, Store Enso represented not only that it had authority "to consummate the [merger]," but also that it had "taken all corporate action necessary . . . to *perform* its obligations" under the Merger Agreement and that "[n]o other corporate action . . . [was] necessary to authorize its . . . *performance* obligations under [the Merger] Agreement."[38] This provision can reasonably be construed to reflect that Stora Enso was representing that it had received approval to order the Skid—the centerpiece of Milestone 1— such that it could timely acquire the Skid post-closing in order to allow the Danville Pilot Plant to be operational in time to meet Milestone 1. Thus, Defendant's interpretation is not the *only* reasonable interpretation.

### B. Merger Agreement § 5.15 is Ambiguous

According to Fortis, Merger Agreement § 5.15 and Schedule 5.15 together required Stora Enso to complete certain steps within the timeframes designated in Schedule 5.15.[39] Specifically, Fortis contends that "[b]oth [Schedule 5.15's] number

---

[38] Merger Agmt. § 4.2(a) (emphasis supplied).

[39] Compl. ¶¶ 45–46.

and timing of personnel [] were inextricably linked or correlated with specific milestone phases and the timing of those phases."[40] With this construction in mind, Fortis alleges that Stora Enso's delay in ordering the Skid, failure to comply with its commitments under Schedule 5.15, and the consequent failure to allow sufficient time for the completion of Milestone 1's extraction campaigns constitute a breach of Section 5.15.[41] These failures, along with unauthorized changes in the design and engineering of the Raceland Plant, also caused Stora Enso's failure to achieve Milestone 2.

Fortis maintains that any other construction of Section 5.15 and Schedule 5.15 would allow Stora Enso, without recourse, to drag its feet, sit on the technology acquired in the Merger and delay performance beyond the deadlines for triggering the Milestone Payments. According to Fortis, "when read in full and situated in commercial context between the parties,"[42] particularly given that the contingent

---

[40] Pl.'s Br. in Opp'n to Def's. Mot. to Dismiss Pl.'s Verified Am. Compl. ("Pl.'s Answering Br.") 43.

[41] Compl. ¶¶ 70–74.

[42] *Chicago Bridge & Iron Co. N.V. v. Westinghouse Elec. Co.*, 166 A.3d 912, 926–27 (Del. 2017).

nature of the merger consideration was a prominent feature of this transaction, the Merger Agreement cannot reasonably be construed to allow this result.

In response, Stora Enso contends that the Complaint lacks any allegation that Stora Enso "failed to have the required number of employees or make the required expenditures as set forth in the 'financial and human resource plan,'" and that the timeframes depicted in Schedule 5.15 were merely guidelines, not mandatory requirements or "binding commitments."[43] This, according to Stora Enso, is the only reasonable interpretation of Schedule 5.15 because Fortis' construction would nullify the contingency of Section 2.14's Milestone Payments and would require Stora Enso to make the Milestone Payments regardless of whether or not the Milestones were actually achieved.[44]

Having considered the various provisions relating to the Milestone Payments alongside Schedule 5.15, I am unable to render a definitive "four corners" construction of Section 5.15. When interpreting a contract, "it is helpful to look at the transaction from a distance [in order to give] sensible life to a real-world

---

[43] Def.'s Opening Br. 22–23.

[44] Def.'s Opening Br. 21.

contract."[45]  Here, the Equity Holders sold technology to Stora Enso in exchange for which they received $25.27 million at closing (subject to certain adjustments) as well as the prospect of receiving an additional $12 million to approximately $30 million if Virdia's technology delivered as promised by the negotiated Milestone due dates.  This structure contemplated that, if the technology performed as Virdia had promised, the Equity Holders would receive the remainder of their bargained-for consideration (potentially more than was paid at closing); if the technology did not deliver, they would receive no further payments.  The Merger Agreement also contemplated, however, that Stora Enso would deploy its enhanced resources to move the project forward in order to test the deal thesis (that Virdia's technology would work as promised) with the understanding that a failure to do so could, under certain circumstances, expose Stora Enso to a breach of contract claim.[46]  Against this backdrop, it is reasonable to construe the time markers in

---

[45] *Heartland Payment Sys., LLC v. Inteam Assocs., LLC*, 171 A.3d 544, 557 (Del. 2017) (internal quotation and citation omitted); *see also Chicago Bridge & Iron Co. N.V.*, 166 A.3d at 927 ("The basic business relationship between [contracting] parties must be understood to give sensible life to any contract.").

[46] *See* Merger Agmt. § 5.15.

Schedule 5.15 as deadlines with which Stora Enso was required to comply or, at least, as deadlines from which Stora Enso could not materially deviate.

On the other hand, Stora Enso's interpretation is also reasonable. To the extent Fortis' construction of Section 5.15 would allow Fortis to recover the Milestone Payments in *all* events when the Milestones are not achieved by the established deadlines, even if that failure is due to issues with the technology or other matters beyond Stora Enso's control, this construction would seem contrary to the contingent nature of the Milestone Payments. Read in this light, Stora Enso's construction of Section 5.15 and Schedule 5.15 as setting guidelines for the performance of certain steps along the pathway towards achieving the Milestones, but not as mandatory performance deadlines, is *also* a reasonable construction.

## III. CONCLUSION

The meaning of Section 4.2 and Section 5.15 (with its accompanying schedule) cannot be discerned as a matter of law from the language within the four corners of the Merger Agreement. Accordingly, the parties will be afforded the opportunity to discover and present extrinsic evidence in support of their competing constructions of these provisions.

Stora Enso's Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ Joseph R. Slights III*