# SUPERIOR COURT
## of the
# STATE OF DELAWARE

Jeffrey J Clark
Resident Judge

Kent County Courthouse
38 The Green
Dover, DE 19901
Telephone (302)735-2111

April 13, 2023

Ms. Kerriann Shelley
134 Brenford Station Road
Smyrna, DE 19977

Ms. Marla S. Benedek, Esquire
Cozen O'Connor
1201 North Market Street, Suite 1001
Wilmington, DE 19801

Mr. Jason A. Carbrera, Esquire
Cozen O'Connor
One Liberty Place,
1650 Market Street, Suite 2800
Philadelphia, PA 19103

> **RE:  *Kerriann Shelley v. Barrett Business Services, Inc.***
> ***K22C-12-013 JJC***

Dear Ms. Shelley and Counsel:

This letter provides the Court's decision and reasoning regarding Defendant Barrett Business Services, Inc.'s motion to dismiss Plaintiff Kerriann Shelley's complaint.  In Ms. Shelley's complaint, she alleges that a fellow employee at Barrett harassed and intimidated her, and that Barrett took no action to address the matter. Barrett counters that the Court must dismiss her suit pursuant to Superior Court Civil Rule 12(b)(1) because she and Barrett agreed to arbitrate any such matters.  For the

reasons that follow, Ms. Shelley agreed to submit her claims to arbitration. That, in turn, divests the Court of subject matter jurisdiction over her claims.

## Background and Facts of Record

For this Rule 12(b)(1) motion, the record includes Ms. Shelley's complaint, a record custodian's affidavit that authenticates Ms. Shelley's personnel documents, the arbitration agreement between the parties, and Ms. Shelley's employment agreement.[1]   Together, they provide the following relevant facts.

In July 2018, Ms. Shelley began her job at Barrett.[2]   On her first day, she signed a mandatory arbitration agreement.[3]   That stand-alone agreement covered any and all claims arising out of her employment,[4] and required both her and Barrett to arbitrate any such claims through Judicial Arbitration and Mediation Services, Inc. ("JAMS").[5]   Later, in December 2018, Ms. Shelley signed an employment agreement with Barrett with an effective date of January 7, 2019.[6]   The employment agreement also contained a separate mandatory arbitration provision that encompassed all employment-related claims.[7]   Unlike the stand-alone agreement, however,  it did not require the parties to use a JAMS arbitrator.   Rather, it sets forth a separate process to select one.[8]

---

[1] *See Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1284 n.14 (Del. 2007) (recognizing that for purposes of a Rule 12(b)(1) motion, the Court may consider matters outside of the complaint).
[2] Def.'s Mot. to Dismiss, Ex. 1A [hereinafter "Arbitration Agreement"].
[3] Def.'s Mot. to Dismiss, Ex. 1, ¶ 4 [hereinafter "Sheehan Aff."].
[4] Arbitration Agreement ¶ 1.
[5] *See* Arbitration Agreement ¶ 2 (providing that "a neutral arbitrator from JAMS will administer any such arbitration(s) pursuant to its Employment Arbitration Rules and Procedures").
[6] Sheehan Aff. ¶ 6.
[7] Def.'s Mot. to Dismiss, Ex. 1B, ¶ 13 [hereinafter "Employment Agreement"].
[8] *Id*.

Ms. Shelley's complaint does not explain how she alleges Barrett discriminated against her.   In her response to Barrett's motion, however, she alleges that a co-worker harassed and bullied her, and that Barrett failed to take action to address his conduct.[9]

In November 2021, Ms. Shelley left Barrett.[10]   She then filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC").[11] The EEOC dismissed her claim on September 22, 2022, and when it did, it included a right to sue notice in the letter.[12]   Ms. Shelley then filed her Superior Court complaint.

**The Parties' Arguments**

Barrett asks the Court to dismiss the action because Ms. Shelley agreed to submit any claims related to her employment to binding arbitration.   In fact, Barrett relies upon two separate arbitration provisions, one contained in a stand-alone document and one contained in a broader employment agreement.   Barrett contends that either provision independently requires the parties to resolve any legal dispute that relates to her employment through arbitration.   Barrett further contends that those provisions divest the Court of subject matter jurisdiction over Ms. Shelley's claims.

Ms. Shelley counters that the arbitration agreements are "null and void" for four reasons.[13]   First, she alleges that although she signed the stand-alone arbitration agreement when Barrett hired her, it is invalid because her manager did not

---

[9] *See* Pl.'s. Resp. to Def.'s Mot. to Dismiss at 1 (describing alleged instances of harassment, bullying, and discrimination by a co-worker and contending that her supervisor was aware of his conduct).

[10] Tr. Oral Arg. at 10.

[11] Compl., Ex. at 1.

[12] *Id*. at 2.

[13] Compl. at 1; Pl.'s Resp. to Def.'s Mot. to Dismiss at 1.

countersign it for more than one year after she signed it.[14]   Second, she contends that the agreements are invalid because Barrett failed to provide her copies of the documents after she executed them.[15]   Third, Ms. Shelley argues that the arbitration provision contained in the employment agreement is void because it recites the wrong employee's name in one location, even though she acknowledges signing the agreement and then working for Barrett for many months thereafter.[16]   Fourth, she contends that both provisions are void because the two arbitration provisions provide different methods to select an arbitrator.[17]

**Standard of Review**

Delaware Superior Court Civil Rule 12(b)(1) requires the Court to dismiss an action if it lacks subject matter jurisdiction over that matter.   Subject matter jurisdiction is, in essence, a question of the power of a court to hear and decide the case before it.[18]   Unlike the standards governing a motion to dismiss under Rule 12(b)(6), the Court's review of a Rule 12(b)(1) motion is more demanding on the non-movant.   If a defendant challenges the Court's jurisdiction by introducing materials extrinsic to the pleadings, the plaintiff must respond by supporting the Court's jurisdiction with competent proof.[19]   In other words, the Court considers extrinsic sources from outside the pleadings that bear on the Court's power to hear the case.[20]

---

[14] Pl.'s Resp. to Def.'s Mot. to Dismiss at 1.

[15] *See* Tr. Oral Arg. at 9 (contending that the first agreement is unenforceable because she did not receive a copy of the agreement to confirm its accuracy).

[16] Pl.'s Resp. to Def.'s Mot. to Dismiss at 1.

[17] Tr. Oral Arg. at 9.

[18] *Abbott v. Vavala*, 2022 WL 453609, at *5 (Del. Ch. Feb. 15, 2022), *aff'd,* 284 A.3d 77, 2022 WL 3642947 (Del. Aug. 22, 2022) (TABLE).

[19] *Id.*

[20] *Id.*

**Discussion**

A written agreement to submit claims to arbitration is enforceable and binding upon the parties to the agreement.[21] The Court of Chancery has exclusive jurisdiction, by statute, to compel parties to arbitrate a matter pursuant to such an agreement.[22] Nevertheless, a significant amount of Superior Court decisional authority has examined the arbitrability of issues in a single context – namely, when determining whether an agreement to arbitrate divests the Superior Court of jurisdiction to consider a claim.[23] For that limited purpose, the Court undertakes two focused inquiries: (1) whether a valid agreement exists, and (2) whether the scope of the agreement covers the plaintiff's claim.[24] If the answers to both questions is yes, the Court has no subject matter jurisdiction over the claim.

Here, the stand-alone arbitration agreement conclusively resolves both issues. Namely, Ms. Shelley signed the document that requires her to submit any employment-related claims to arbitration. The agreement defines "arbitrable claims" as any matters "arising out of, related to or connected with the Employee's employment with [Barrett], including, but by no means limited to, claims of discrimination, harassment, unpaid wages, [and] breach of contract."[25] Discrimination claims are causes of action that permissively fall within the scope of mandatory arbitration agreements between employers and employees.[26] Although

---

[21] 10 *Del. C.* § 5701.

[22] *Id.*

[23] *See Geraci v. Uber Tech., Inc.*, 2021 WL 5028368, at *2 (Del. Super. Oct. 29, 2021) (explaining that the Superior Court has limited jurisdiction to determine if a valid, enforceable arbitration agreement exists for purposes of determining whether it has subject matter jurisdiction over a claim); *see also Jones v. 810 Broom St. Operations, Inc.*, 2014 WL 1347746, at *1 (Del. Super. Apr. 7, 2014) (recognizing similarly that the Superior Court's jurisdiction is limited to determining whether a valid agreement exists for purposes of exercising the Court's subject matter jurisdiction).

[24] *Jones*, 2014 WL 1347746, at *1.

[25] Arbitration Agreement ¶ 1.

[26] *Hurtt v. Del Frisco's Rest. Grp.*, 2019 WL 2516763, at *6 (Del. Super. Jun. 18, 2019). Ms. Shelley has not alleged sexual harassment. Nevertheless, the Court recognizes that, if she had,

5

Ms. Shelley's complaint does not fully explain how she believes Barrett discriminated against her, the Court infers that she alleges some nature of discrimination. Because the discrimination and harassment that she alleges flows from her employment relationship, the Court has no jurisdiction over the matter if the agreement was valid.

As to validity, Ms. Shelley incorrectly contends that the arbitration agreement and the employment agreement are void. First, her argument that the stand-alone agreement is "null and void" because Barrett's Area Manager did not counter-sign the document until many months after she signed it is contrary to contact law. A written contract binds a party after he or she signs it, even under circumstances where the other party did not, as long as both parties enjoy the benefits of the bargain.[27] In other words, an agreement signed by one party binds that party if the course of conduct between the two demonstrates mutual assent.[28] Here, Ms. Shelley signed the arbitration agreement, performed work at Barrett for almost four years, and received pay and other benefits for that work. Accordingly, a Barrett representative's failure to sign the arbitration agreement contemporaneously with Ms. Shelley does not render it void.

---

the Court would need to consider whether the recently enacted Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, Pub. L. No. 117-90 136 Stat. 26 (2021) (codified as amended at 9 U.S.C. § 402) would make the arbitration agreement unenforceable. In this case, even if Ms. Shelley had alleged sexual harassment, the Act would not apply because it is not retroactive. *See Woodruff v. Dollar Gen. Corp.*, 2022 WL 17752359, at *3 (D. Del. Dec. 19, 2022) (explaining that the Act does not apply retroactively to remove claims of sexual harassment and assault from mandatory arbitration). Ms. Shelley's employment with Barrett ended in November 2021. Tr. Oral Arg. at 10. The Act's effective date followed on March 3, 2022.

[27] *Elia v. Hertrich Fam. of Auto. Dealerships, Inc.*, 103 A.3d 514, 2014 WL 5410723, at *1 n.3 (Del. Oct. 23, 2014) (TABLE) (citing 2 Samuel Williston & Richard A. Lord *Williston on Contracts* § 6:44 (4th ed. 2003)).

[28] *Hertrich*, 2014 WL 5410723, at *1 n.3 (citing 7 Phillip L. Bruner & Patrick J. O'Connor *Construction Law* § 21:46 (2014)).

The remainder of Ms. Shelley's contentions are also incorrect. Namely, there is no basis in contract law to support the contention that the agreements became unenforceable because she did not retain copies of them.[29] Nor is there a basis to deem both agreements unenforceable because the employment agreement listed the wrong name in one location. Here, she does not contend that she was unaware of either provision. Moreover, she worked for Barrett for years and received pay for her work.

Finally, although the two agreements provide different methods to select an arbitrator, the two documents define arbitrable disputes in the same way. Namely, they include discrimination and harassment claims within the definition of arbitrable matters. Ultimately, if the parties cannot agree regarding who should arbitrate the matter, the differences in the two documents may leave an open question. That question, if it arises, would fall to the Court of Chancery.[30] For purposes of this Court's review, however, the stand-alone arbitration agreement was valid, and its scope encompassed Ms. Shelley's claims.

## Conclusion

For the reasons explained above, (1) the parties entered a valid arbitration agreement, and (2) Ms. Shelley's claims fall within the scope of that agreement. Accordingly, the Court lacks subject matter jurisdiction to consider her claims. As a result, Barrett's Motion is **GRANTED, with prejudice** as to this Court's

---

[29] *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 78–79 (Del. 2006) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002)).

[30] *See AffiniPay, LLC, v. West*, 2021 WL 4262225, at \*5 (Del. Ch. Sept. 17, 2021) (recognizing that the Court of Chancery has jurisdiction to evaluate and reconcile two competing arbitration clauses); *see also Willie Gary,* 906 A.2d at 79–80 (providing the proper framework for a court with jurisdiction to determine the arbitrability of a cause of action).

jurisdiction, but **without prejudice** on the merits, so as to preserve Ms. Shelley's right to submit her claims to arbitration.[31]

      **IT IS SO ORDERED.**

Very truly yours,

/s/ Jeffrey J Clark
Resident Judge

JJC:klc
*Via File & ServeXpress*
*U.S. Mail to Plaintiff Kerriann Shelley*

---

[31] The Court recognizes the requirements of 10 *Del. C.* §1902.   Here, neither party has sought to submit the matter to arbitration.  In fact, Barrett represented that it would not oppose arbitrating the matter.  Accordingly, there is presently nothing to compel, leaving Section 1902's process for removal to the Court of Chancery untriggered.  Under these circumstances, the Court  dismisses Ms. Shelley's suit with prejudice as to any claims in this Court, with the intent to not prejudice the parties' ability to arbitrate the matter.