**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

DAVID A. JASINSKI,        )
                         )
       Plaintiff,         )
                         )
       v.              )    C.A. No. 2023-0630-BWD
                         )
NORMAN H. SINGER and SANDRA   )
K. SINGER,          )
                         )
       Defendants.     )

## ORDER DENYING MOTION TO DISMISS

WHEREAS:[1]

A.     On June 19, 2023, plaintiff David A. Jasinski ("Plaintiff") initiated this action through the filing of a Complaint for Injunctive Relief (the "Complaint"). Compl. For Injunctive Relief [hereinafter, "Compl."], Dkt. 1.

B.     As alleged in the Complaint, in the 1920s, non-party Rehoboth-By-The Sea Realty Company ("RBTS") subdivided a tract of land south of Rehoboth Beach, now part of Dewey Beach, Delaware. Compl. ¶ 3. RBTS "initially transferred [lots within the tract] by way of 60-year leases, with lessees constructing their own

---

[1] The following facts are taken from the Complaint and the documents incorporated by reference therein. *See Freedman v. Adams*, 2012 WL 1345638, at *5 (Del. Ch. Mar. 30, 2012) ("When a plaintiff expressly refers to and heavily relies upon documents in her complaint, these documents are considered to be incorporated by reference into the complaint[.]" (citation omitted)).

dwellings." *Id.* ¶ 4. Since the initial leases, lessees have transferred lots by assigning their leasehold interests. *Id.*

C.      Plaintiff currently leases land at 133 Chesapeake Street in Dewey Beach, Delaware (the "Jasinski Lot"), pursuant to a long-term lease with RBTS, which he assumed through assignment in 2004. *Id.* ¶ 1. On January 3, 2020, defendants Norman and Sandra Singer (together, "Defendants") began leasing the lot next door at 135 Chesapeake Street (the "Singer Lot"), "also pursuant to a long-term lease originating with [RBTS]." *Id.* ¶ 2.

D.      According to the Complaint, on September 15, 1966, RBTS leased the Jasinski Lot to non-party Alvah Wood Stuart Jr. *Id.* ¶ 5. On April 8, 1999, Stuart assigned that lease to Kathleen A. Kramedas McGuiness. *Id.* ¶¶ 5-6. McGuiness later leased the Singer Lot as well, constructing "dwellings and other structures . . . without regard to appropriate setbacks" on the two lots. *Id.* ¶¶ 5-7. In 2004, to permit the transfer of the Jasinski and Singer Lots, the boundary lines were redrawn, but a gravel driveway on the Singer Lot continued to encroach on the Jasinski Lot. *Id.* ¶¶ 7-11. As of 2019, a survey prepared by True North Land Surveying showed a five-foot, nine-inch gravel driveway encroaching onto the Jasinski Lot. Compl., Ex. C. The Singer Lot was assigned to Defendants on January 3, 2020, at which time another survey "show[ed] an unspecified encroachment of their driveway onto the Jasinski [Lot]." *Id.* ¶ 10; *see also* Compl., Ex. B.

2

E.     The Complaint alleges that "[s]hortly after [Defendants'] lease assignment in 2020, Defendants arranged to have their [gravel] driveway improved with pavers," which "increased their encroachment . . . ." Compl. ¶¶ 12, 18.

F.     The Complaint asserts two counts. Count One alleges that the encroaching driveway constitutes a trespass. *Id*. ¶¶15-20. Count Two alleges that Defendants have tortiously interfered with Plaintiff's lease agreement with RBTS. *Id*. ¶¶ 17, 21-28. Plaintiff seeks an order "enjoin[ing] Defendants from utilizing any portion of the [Plaintiff's] property" and "direct[ing] Defendants[] to remove the portion of the[] gravel and paver driveway that encroach[es] on Plaintiff's property . . . ." *Id*. at 6.

G.     On August 1, 2023, Defendants moved to dismiss the Complaint and filed an opening brief in support thereof (the "Motion to Dismiss"). Defs.' Br. In Supp. Of Their Mot. To Dismiss [hereinafter, "OB"], Dkt. 4. On August 22, 2023, Plaintiff filed his Answering Brief in Opposition to Defendants' Motion to Dismiss. Pl.'s Ans. Br. In Opp'n To Defs.' Mot. To Dismiss [hereinafter, "AB"], Dkt. 5. On September 2, 2023, Defendants filed a Reply to Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss. Defs.' Reply To Pl.'s Br. In Opp'n To Defs.' Mot. To Dismiss [hereinafter, "RB"], Dkt. 6. The Court heard oral argument on March 11, 2024. Dkt. 8.

3

NOW, THEREFORE, IT IS HEREBY ORDERED, this 25th day of March, 2024, as follows:

1.  Defendants have moved to dismiss the Complaint under Court of Chancery Rule 12(b)(6), arguing that Plaintiff lacks standing and that his claims are untimely.

2.  "Where 'the issue of standing is so closely related to the merits, a motion to dismiss based on lack of standing is properly considered under Rule 12(b)(6) rather than Rule 12(b)(1).'" *Delta Eta Corp. v. City of Newark*, 2023 WL 2982180, at *19 (Del. Ch. Feb. 2, 2023) (first quoting *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1280 (Del. 2007); and then quoting *Legent Gp., LLC v. Axos Fin., Inc.*, 2021 WL 73854, at *2 (Del. Ch. Jan. 8, 2021)).  The Court "must determine whether the petitioner has pled facts from which it may reasonably be inferred that she has standing to bring her claims." *In re Corbett v. Corbett*, 2019 WL 6841432, at *4 (Del. Ch. Dec. 12, 2019).

3.  In addition, dismissal under Rule 12(b)(6) is appropriate when it is clear from the face of the complaint that the claims are time-barred.  *See Pomeranz v. Museum P'rs, L.P.*, 2005 WL 217039, at *2 (Del. Ch. Jan. 24, 2005) ("When it is clear from the face of the [c]omplaint . . . that plaintiffs' tolling theories fail even to raise a legitimate doubt about the time the claims accrued, dismissal is appropriate if the claims were filed after the applicable limitations period expired." (alterations

4

in original) (internal citation and quotation marks omitted)); *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at \*3 (Del. Ch. July 17, 1998) ("[I]t is well settled that where the complaint itself alleges facts that show that the complaint is filed too late, the matter may be raised by [a] motion to dismiss." (internal citation omitted)), *aff'd*, 725 A.2d 441 (Del. 1999).

4. When reviewing a motion to dismiss under Rule 12(b)(6), Delaware courts "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well-pleaded' if they give the opposing party notice of the claim; [and] (3) draw all reasonable inferences in favor of the non-moving party . . . ." *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011).

## I. Standing

5. Defendants first argue that Plaintiff lacks standing to bring a trespass claim.[2] *See* OB at 11. "The elements of trespass, a strict liability offense, are as follows: (1) the plaintiff must have lawful possession of the property; (2) the defendant must have entered onto the plaintiff's land without consent or privilege; and (3) the plaintiff must show damages." *Kuhns v. Bruce A. Hiler Delaware QPRT*,

---

[2] Defendants also generally contend that Plaintiff lacks standing to assert *any* claims but offer no argument for why Plaintiff might lack standing to bring a claim for tortious interference with a lease agreement to which Plaintiff is a party.

2014 WL 1292860, at *19 (Del. Ch. Mar. 31, 2014) (citation and internal quotation marks omitted), *aff'd sub nom. Hiler v. Kuhns*, 116 A.3d 1243 (Del. 2015).

6.  Defendants contend that, because Plaintiff "has an assignment of lease whereby the ownership of the land remains with" RBTS, Plaintiff is not "in lawful possession" of the Jasinski Lot. OB at 12. This argument confuses lawful possession with legal title. It is black-letter law that a tenant in actual possession pursuant to a valid lease has standing to bring a claim for trespass:

> A tenant may sue a third person for trespass or other torts upon the tenant's estate. A lessee in actual possession of real estate may maintain such action. Damages may be sought for a wrongful act of a third person that interferes with or disturbs the tenant's possession, use, or enjoyment of the premises, lessens the value of the use for the term, or otherwise affects the tenant's interest in it. The right of action for injury to the possession belongs exclusively to the lessee, whether or not the lessee retains possession, because the lessee has the exclusive right of possession.

49 Am. Jur. 2d *Landlord and Tenant* § 426, Westlaw (database updated Feb. 2024) (footnotes omitted); *see also State ex rel. Jennings v. Monsanto Co.*, 299 A.3d 372, 388 (Del. 2023) (explaining that "possession, for . . . trespass," includes "occupancy of land with intent to control it," meaning "acts done upon the land as manifest a claim of exclusive control of the land" (citation and internal quotation marks omitted)). *Cf. Frye v. Est. of Raphaelson*, 2023 WL 5624717, at *12 (Del. Ch.) (explaining that a landlord who was not "in possession of the land" and "did not

6

occupy it" could not assert a claim for trespass against a holdover tenant), *R. & R. adopted sub nom. Frye v. Raphaelson*, 2023 WL 5955577 (Del. Ch. 2023).

7. The Complaint alleges that Plaintiff lawfully possesses the Jasinki Lot pursuant to his lease with RBTS. *See* Compl. ¶ 16 ("Plaintiff is entitled to lawful possession of [the Jasinski Lot] by virtue of his acceptance of an assignment of the lease to that property"). Plaintiff, therefore, has adequately alleged his standing to bring a claim for trespass.

## II. Timeliness

8. Defendants next argue that Plaintiff's claims are untimely under either the applicable statute of limitations or the equitable doctrine of laches.

9. "Statutes of limitations exist at law and serve to bar claims brought after the limitations period set forth in the statute has expired." *Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 974-75 (Del. Ch. 2016). "Statutes of limitations traditionally do not apply directly to actions in equity, although courts of equity may apply them by analogy in determining whether a plaintiff should be time-barred under the equitable doctrine of laches." *Id*. at 975.

10. Counts One (trespass) and Two (tortious interference with contract) assert legal claims for which Plaintiff seeks equitable relief. Where a plaintiff brings a legal claim seeking equitable relief, the Court will apply the statute of limitations by analogy "with at least as much and perhaps more presumptive force given its

7

quasi-legal status and will bar claims outside the limitations period absent tolling or extraordinary circumstances." *Id*. at 984.

**A.    Trespass**

11.    The parties dispute which statute provides the limitations period applicable to Plaintiff's trespass claim.    Defendants contend that the statute of limitations is governed by 10 *Del. C.* § 8106(a), which provides that "[n]o action to recover damages for trespass . . . shall be brought after the expiration of 3 years from the accruing of the cause of such action . . . ."  Plaintiff, on the other hand, asserts that, while styled as a "trespass" claim, this is effectively a "possessory" action governed by the adverse possession statutes. *See* AB at 12 (citing *Humes v. Charles H. W. Farms, Inc.*, 2006 WL 337038, at *1-2 & n.2 (Del. Super. Jan. 18, 2006) (explaining that, notwithstanding the three-year statute of limitations under Section 8106, a "possessory action" is "governed by the real property statute")).  Title 10, Section 7901 provides that "[n]o person shall make an entry into any lands, tenements, or hereditaments, but within 20 years next after the person's right or title to the same first descended or accrued." 10 *Del. C.*  § 7901.  And Section 7902 likewise provides a twenty-year limitations period:

> No person shall have, or maintain any writ of right, or action, real, personal, or mixed, for, or make any prescription, or claim, to, or in, any lands, tenements, or hereditaments, of the seisin, or possession of the person, the person's ancestor, or predecessor, and declare, or allege, in any manner whatever, any further seisin of the person, the person's ancestor, or predecessor, but only an actual seisin of the person, the

8

person's ancestor, or predecessor, of the premises sued for, or claimed, within 20 years next before such writ, or action.

10 *Del. C.* § 7902.

12.     The parties also dispute when the trespass claim accrued. "A cause of action generally accrues at the moment of the wrongful act." *Acierno v. Goldstein*, 2004 WL 1488673, at *3 (Del. Ch. June 25, 2004) (explaining that when the defendant "knowingly and intentionally[] physically invaded[] and cleared the property[,]" such conduct "thereby g[ave] rise to the claims for trespass and conversion"). The date on which a claim for trespass accrues depends on whether the trespass is viewed as "continuing" or "permanent." *Id.* "A continuing wrong 'is established by continual tortious acts . . . .'" *Acierno v. Goldstein*, 2005 WL 3111993, at *5 (Del. Ch. Nov. 16, 2005) (citation omitted).[3] If the trespass is continuing, the limitations period does not begin to run until the trespass ceases. *Cf. Lebanon Cnty. Emps.' Ret. Fund v. Collis*, 287 A.3d 1160, 1178 (Del. Ch. 2022) ("[T]he limitations period does not begin to run, until the continuing wrong ceases."). A permanent trespass, on the other hand, occurs "[i]f the injury is

---

[3] *See also Jagger v. Schiavello*, 93 A.3d 656, 660-61 (Del. Super. 2014) ("As to continuing trespass, such a claim occurs when the defendant tortiously places or erects a structure or other thing on the land of another person, and constitutes a trespass for the entire length of time such thing is wrongfully on that land."); *Gordon v. Nat'l R.R. Passenger Corp.*, 1997 WL 298320, at *9 (Del. Ch. Mar. 19, 1997) (explaining that "a party's failure to remove a thing which he has tortiously placed on land of another constitutes a continuing trespass for as long as the thing remains" (citing Restatement (Second) Torts § 161 cmt. b (Am. L. Inst. 1965))).

9

'permanent and effects a permanent change in the condition of the land.'" *Acierno*, 2005 WL 3111993, at *5 (citation omitted). If "[t]he harm continued, but the tortious conduct did not," then "the statute of limitations runs against such action from the time [the trespass] first occurred, or at least from the date it should reasonably have been discovered." *Id.* (citation and internal quotation marks omitted).

13.     As Defendants see it, the Singers' gravel driveway has encroached on the Jasinski Lot since the boundary line was redrawn in 2004. OB at 14. Viewing the encroachment as a permanent trespass and applying a three-year limitations period, the statute of limitations ran in 2007—sixteen years before Plaintiff filed the Complaint in June 2023. *Id*. at 15. If, however, the trespass is better viewed as a continuing wrong, or if a twenty-year limitations period applies, then the trespass claim is timely.

14.     Assuming, without deciding, that the gravel driveway constitutes a permanent trespass and that the applicable limitations period is three years, the Motion to Dismiss nevertheless must be denied. Even if a trespass claim premised on the gravel driveway were time-barred, the Complaint alleges that the installation of a new paver driveway in September 2020, less than three years before the Complaint was filed, "increased" the previous encroachment and made it "more permanent." *See* Compl. ¶¶ 14, 17. Those allegations conceivably constitute a

10

distinct trespass for which Plaintiff may be entitled to injunctive relief. The Motion to Dismiss Count One is, therefore, denied.

## B. Tortious Interference With Contract

15. "In Delaware, claims for tortious interference with contractual relations are governed by [a] three year statute of limitations." *WaveDivision Hldgs., LLC v. Highland Cap. Mgmt. L.P.*, 2011 WL 13175837, at *9 (Del. Super. Oct. 31, 2011) (citing 10 *Del. C.* § 8106)). "[T]he cause of action begins to accrue at the time a tort is committed." *WaveDivision Hldgs., LLC v. Highland Cap. Mgmt. L.P.*, 2010 WL 1267126, at *5 (Del. Super. Mar. 31, 2010).

16. "To prove [a] claim for tortious interference, [Plaintiff] must show: (1) there was a contract, (2) about which the particular defendant knew, (3) an intentional act that was a significant factor in causing the breach of contract, (4) the act was without justification, and (5) it caused injury." *WaveDivision Hldgs., LLC*, 2011 WL 13175837, at *11.

17. The Complaint identifies only one "intentional act" that Defendants allegedly have taken—installing the paver driveway in September 2020. Compl. ¶¶ 12, 17. The tortious interference claim against Defendants could not have accrued before that date. The Complaint was filed less than three years later, on June 19, 2023. Thus, the statute of limitations cannot bar Count Two.

11

## C. Laches

18. Finally, Defendants argue that even if Plaintiff's claims are not barred by the applicable statutes of limitations, they are barred by laches. "While there is 'no hard and fast rule as to what constitutes laches,' establishing the elements of the defense generally requires: (1) knowledge by the claimant; (2) unreasonable delay in bringing the claim; and (3) resulting prejudice to the defendant." *Stewart v. Wilmington Tr. SP Servs., Inc.*, 112 A.3d 271, 295 (Del. Ch.) (quoting *Reid v. Spazio*, 970 A.2d 176, 183 (Del. 2009)), *aff'd*, 126 A.3d 1115 (Del. 2015).

19. According to Defendants, Plaintiff knew or should have known since 2004 that the gravel driveway encroached on the Jasinski Lot—yet Plaintiff waited nineteen years, until after Defendants modified the driveway at significant expense, to assert his rights. While that defense may carry the day at trial, it raises fact issues that cannot be resolved on the pleadings. *See id.* ("The defense of laches is 'not ordinarily well-suited' for treatment on a Rule 12(b)(6) motion." (citation omitted)).

20. For the foregoing reasons, the Motion to Dismiss is DENIED.

21. This order is a final report pursuant to Court of Chancery Rules 143 and 144. Exceptions are stayed under Court of Chancery Rule 144(f).

*/s/ Bonnie W. David*

Bonnie W. David
Magistrate in Chancery

12