**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| ACME MARKETS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) C.A. No.: N24C-04-089 EMD CCLD | |
| | ) | |
| OEKOS KIRKWOOD, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Submitted: May 12, 2025
Decided: July 31, 2025

*Upon Defendant Oekos Kirkwood, LLC's Motion to*
*Dismiss Plaintiff Acme Markets, Inc.'s Complaint*
***GRANTED in part and DENIED in part***

Geoffrey G. Grivner, Esquire, Buchanan Ingersoll & Rooney PC, Wilmington, Delaware, Gerald E. Burns, Esquire, Buchanan Ingersoll & Rooney PC, Philadelphia, Pennsylvania. *Attorneys for Plaintiff Acme Markets, Inc.*

Anthony N. Delcollo, Esquire, Thomas H. Kramer, Esquire, Offit Kurman, P.A., Wilmington, Delaware, Todd M. Reinecker, Esquire, Piliero Mazza, PLLC, Annapolis, Maryland. *Attorneys for Defendant Oekos Kirkwood, LLC.*

**DAVIS, P. J.**

## I.     INTRODUCTION

This civil action concerns a dispute over a commercial lease and is assigned to the Complex Commercial Litigation Division.  This case involves a commercial lease (the "Lease") for real property, located at 4365 Kirkwood Highway in Wilmington, Delaware (the "Property").  Plaintiff Acme Markets, Inc. ("Acme") is suing Oekos Kirkwood, LLC ("Oekos") for allegedly miscalculating a cost-of-living increase in rent under the Lease.  The cost-of-living increase first

took effect in 2015. The Lease provided for optional renewals every five years. One renewal term began in 2015, and another in 2020.

Acme originally sued in the Delaware Court of Chancery in 2022. A Magistrate in Chancery issued a Final Report (the "Final Report") on July 31, 2023, recommending dismissal of Acme's complaint for lack of subject matter jurisdiction. Additionally, the Magistrate held that the Lease was a severable contract. Accordingly, the Magistrate recommended that any claims relating to the Lease renewal in 2015 were barred by the statute of limitations, but claims related to the Lease renewal in 2020 were not barred. Subsequently, the Vice Chancellor adopted the Final Report as to dismissal for lack of subject matter jurisdiction; however, the Vice Chancellor did not adopt the Final Report as to recommendations on the statute of limitations issues.

Acme transferred the case to this Court. Oekos moved to dismiss the Complaint on statute of limitations grounds (the "Motion"). The Court held a hearing on the Motion on May 12, 2025. At the end of the hearing, the Court took the Motion under advisement.

The Court finds that the Lease is a severable contract. Acme's claims regarding the Lease's renewal in 2015 are time barred. The Court also finds that Acme's claims related to the Lease's renewal in 2020 are not barred. Accordingly, the Motion is **GRANTED** in part and **DENIED** in part.

## I.     RELEVANT FACTS

### A. THE LEASE

The Lease is between Acme, the tenant who operates a supermarket on the Property, and Oekos, the owner of the Property and Acme's landlord.[1] Acme and Oekos are not the original

---

[1] D.I. 1 ("Compl.") ¶¶ 1 and 13.

2

parties to the Lease.[2]  The Lease was originally executed on August 15, 1967.[3]  The original

parties to the Lease were Able Equity Corp., the landlord, and Woodlyne Supermarkets, Inc., the

tenant.[4]

The Lease was first amended on November 14, 1969 whereby Able Associates, Inc. took

over as assignee of Able Equity Corp., and Woodlyne Supermarket, Inc. changed to Woodlyne

Pathmark, Inc.[5]  On April 29, 1970, those parties entered into the Confirmation of Lease Term,

which confirmed that the term of the Lease would terminate on April 30, 1990.[6]  Subsequently,

on January 16, 1979, Supermarkets General Corporation, took over as successor in interest to

Woodlyne Pathmark, Inc., and exercised an option to extend the Lease until April 30, 1995.[7]

"At that time, the tenant possessed four remaining options to extend the term of the Lease by five

years, the last of which expired on April 30, 2015."[8]

On May 15, 1992, Supermarkets General Corporation and Able Associates, Inc. executed

a letter agreement (the "Letter Agreement").[9]  The Letter Agreement provided for two additional

options to extend the Lease by five (5) years each extension (from 2015 to 2020 and from 2020

to 2025).[10]  The Letter Agreement contained a cost-of-living calculation (the "Calculation").[11]

The Calculation provides:

> Notwithstanding anything to the contrary in Paragraph B of Section 4 of the Lease,
> the fixed annual rental during the last two renewal periods shall be increased by a
> sum equal to the greater of (i) 15% of the fixed annual rental payable at the
> expiration of the preceding Extension Period, or (ii) the Cost of Living Increase.
> The 'Cost of Living Increase' shall be 50% of the amount by which the fixed annual

---

[2] *Id.* ¶ 14.
[3] *Id.*
[4] *Id.*
[5] *Id.* at ¶ 15.
[6] *Id.* at ¶ 16.
[7] *Id.* at ¶ 18.
[8] *Id.*
[9] *Id.* ¶ 19.  A copy of the Letter Agreement is attached as Ex. B to the Complaint.
[10] *Id.*
[11] Id ¶ 20.

rental payable at the expiration of the preceding Extension Period would be increased by multiplying such rental by a fraction, the numerator of which shall be the Price Index for the March immediately preceding the commencement of the Extension Period and the denominator of which shall be the Price Index for March, 2000.[12]

The Lease was extended under the Letter Agreement. On May 6, 2003, Able Associates, Inc. and Pathmark Stores, Inc., the successor to Supermarkets General Corporation as the tenant under the Lease, agreed to an additional five-year renewal option (until 2030) (the "Second Letter Agreement").[13] The Second Letter Agreement slightly revised the Calculation—changing the minimum 15% rent increase each option to 12% (the "Revised Calculation").[14] The Revised Calculation continued, however, to include the same formula for calculating the cost-of-living increase.[15]

In 2007, The Great Atlantic & Pacific Tea Company ("A&P") succeeded to the interests of Pathmark Stores, Inc. as tenant under the Lease.[16] In or around November 2007, Oekos succeeded the interests of Able Associates, Inc. as landlord.[17]

Oekos and A&P navigated the first renewal governed by the Revised Calculation. A&P decided to exercise its option to extend the Lease for the 2015-2020 term (the "2015 Term").[18] At that time, the rent was $193,716.96 per year, or $16,143.08 per month.[19] Oekos took the first stab at calculating the increase to this rent for the new term in an April 6, 2015 letter (the "2015 Letter").[20] In the 2015 Letter, Oekos quoted the Calculation (ignoring the change to 12% in the

---

[12] *Id.* at ¶ 20. Paragraph B of Section 4 of the Lease provides: "Any extension shall be upon the same terms, provisions, covenants and conditions as are in effect hereunder at the time of the commencement of such extension." D.I. 1, Ex. A.
[13] *Id.* ¶ 23.
[14] *Id.* ¶ 25.
[15] *Id.*
[16] *Id.* ¶ 26.
[17] *Id.* ¶ 27.
[18] Id. ¶ 28.
[19] *Id.* ¶ 30.
[20] *Id.* at ¶ 29.

Revised Calculation) and specified the two options as: $222,774.50 annually (or $18,564.54 monthly) under the 15% minimum or $328,046.11 annually (or $27,337.17 monthly) under the cost-of-living formula.[21]  Because the latter was greater, Oekos concluded in the 2015 Letter, "the new base rent will be the Cost of Living increase."[22]

A&P never challenged Oekos' calculations in the 2015 Letter.  A&P was, at that time, a Chapter 11 debtor-in-possession and "only several months later," on November 17, 2015, A&P assigned, and Acme assumed, A&P's interest under the Lease.[23]  Acme alleges that Oekos misinterpreted the formula causing the increase to be more than triple what it should have been.[24]

The number arrived at under the Revised Calculation would be applied for the 5-year renewal periods starting in 2015 and 2020.[25]

Acme discovered the miscalculation in September of 2019, and sent Oekos a letter regarding the error.[26]  Oekos disagreed that there had been a miscalculation.[27]

In October 2019, Acme exercised an option to extend the Lease from 2020 through 2025 (the "2020 Term").[28]  Oekos sent a letter in April 2020 setting forth the cost-of-living increase calculation for the 2020 renewal.[29]  Acme alleges that Oekos once again miscalculated the cost-of-living increase for the 2020 renewal.[30]

---

[21] D.I. 1 at Ex. C.  The Plaintiff avers the cost-of-living calculation was incorrect and, correctly calculated, would only result in an increase of $37,471.16 ($231,188.12 annual rent, $96,857.99 less than the total provided by Oekos in the 2015 Letter). Compl. ¶¶ 31-38.
[22] D.I. 1, Ex. C.
[23] Compl. ¶¶ 41-42.
[24] Compl. ¶ 39.
[25] Compl. ¶ 28.
[26] Compl. ¶ 43.
[27] Compl. ¶ 44.
[28] Compl. ¶ 45.
[29] Compl. ¶ 49.
[30] Compl. ¶ 51.

### B. THE COURT OF CHANCERY LITIGATION.

Acme filed suit in the Court of Chancery in July of 2022 to settle this dispute.[31]  That complaint asserted counts for declaratory judgment, breach of contract, and reformation of lease.[32]  Oekos moved to dismiss.[33]  The Magistrate issued the Final Report, dismissing the reformation claim, holding that claims stemming from the 2015 term were time barred, and that the court lacked subject matter jurisdiction.[34]  The Magistrate found that the lease was a severable contract, with the 2015 Term and 2020 Term being separate contracts.[35]  The Magistrate also found that the 2015 term claims were time barred, but the 2020 claims were viable.

Acme filed a notice of exceptions to the Final Report.[36]  Upon review, the Vice Chancellor adopted the Final Report's recommendation to dismiss the reformation claim and lack of subject matter jurisdiction.[37]  However, the Vice Chancellor did not adopt the Final Report's recommendations regarding the limitations issues, determining that it was unnecessary to reach the statute of limitations issue after the Magistrate determined the Court of Chancery lacked subject matter jurisdiction.[38]

## II.    STANDARD OF REVIEW

Upon a motion to dismiss under  Superior Court Civil Rule 12(b)(1), whenever it appears that the Court lacks subject matter jurisdiction, the Court must dismiss the claim.[39]  In considering a Civil Rule 12(b)(1) motion, the Court "need not accept the plaintiff's factual

---

[31] 2022-0623-SEM, D.I. 1.
[32] *Id.*
[33] 2022-0623-SEM, D.I. 7, 11.
[34] 2022-0623-SEM, D.I. 20.
[35] 2022-0623-SEM, D.I. 20.
[36] 2022-0623-SEM, D.I. 21.
[37] 2022-0623-SEM, D.I. 36.
[38] *Id.*
[39] *KT4 Partners LLC v. Palantir Techs. Inc.*, 2021 WL 2823567, at *24 (Del. Super. June 24, 2021).

allegations as true and is free to consider facts not alleged in the complaint.[40]  Accordingly, whereas the movant "need only show that the Court lacks jurisdiction,"[41] the non-movant bears the "far more demanding" burden "to prove jurisdiction exists."[42]

Upon a motion to dismiss under Civil Rule 12(b)(6), the Court (i) accepts all well-pleaded factual allegations as true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[43]  However, the court must "ignore conclusory allegations that lack specific supporting factual allegations."[44]

### III.    PARTIES CONTENTIONS

Oekos contends that Acme's claims are barred by the three-year statute of limitations for breach of contract.[45]  Oekos maintains that Acme's claims accrued at the time the contract was breached, which was in 2015 when Oekos made the initial miscalculation.[46]

Acme opposes dismissal.  Acme argues that the claims are not barred because the Lease is either a continuous or severable contract.[47]  Acme notes that, for a continuous contract, the statute of limitations only begins to run at the end of the contract when all damages are

---

[40] *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1284 n.14 (Del. 2007) (internal quotation marks omitted); *see Nelson v. Russo*, 844 A.2d 301, 302 (Del. 2004) ("In deciding whether the Superior Court has subject matter jurisdiction, we must look beyond the language in the complaint ...."); *see also Texcel v. Com. Fiberglass*, 1987 WL 19717, at *2 (Del. Super. Nov. 3, 1987) ("The gravamen of subject matter jurisdiction ... lies not in the pleading but in the existence of facts necessary for the court to exercise its jurisdiction.").

[41] *Airbase Carpet Mart, Inc. v. AYA Assocs., Inc.*, 2015 WL 9302894, at *2 (Del. Super. Dec. 15, 2015), *aff'd* 2016 WL 4938890 (Del. Sept. 16, 2016).

[42] *Appriva*, 937 A.2d at 1284 n.14 (internal quotation marks omitted).

[43] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy,* No. 09C-09-136, 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).

[44] *Ramunno v. Crawley,* 705 A.2d 1029, 1034 (Del. 1998).

[45] D.I. 8 ("Br."), at 7.

[46] Br., at 8.

[47] D.I. 9 ("Ans. Br."), at 13.

ascertainable.[48]  Acme argues that is the case with the Lease.[49]  Although not fully spelled out, Acme seems to contend that the Lease provides several optional renewals.  Because of this, damages could have been for 5, 10 or even 15 years of miscalculation.  Neither party would know until the options were exercised.  Accordingly, damages could not be ascertained until the end of the contract.

In the alternative, Acme asserts that the Lease is severable into monthly contracts.[50]  In a footnote, Acme acknowledges that the lease could be severable based on renewal terms.[51]  In either case though, Acme argues that this determination is dependent on the intent of the parties, which cannot be determined at the 12(b)(6) stage.[52]

Acme also argues that Oekos did not raise the continuous/severable argument in its opening brief, despite being aware of Acme's position, so Oekos has waived the argument.[53]

Oekos does assert this argument in its reply.  Oekos contends that the continuous breach doctrine only applies to inherently unknowable injuries, which is not the case here.[54]  Even if the Lease is severable, the 2015 Term claims are time-barred.[55]

## IV.    DISCUSSION

### A.  THE COURT FINDS THAT OEKOS DID NOT WAIVE ANY ARGUMENT.

The Court does not find that Oekos waived any argument on whether the Lease is a continuous or severable contract.  These arguments are Acme's argument and should not have been anticipated or raised initially in the Motion.  The Court notes that movants are generally

---

[48] Ans. Br., at 14.
[49] *Id*.
[50] Ans. Br., at 16.
[51] Ans. Br., at 16 n.4.
[52] Ans. Br., at 17.
[53] Ans. Br., at 16-17.
[54] D.I. 11 ("Reply"), at 3-5.
[55] Reply, at 5.

prohibited from raising an argument in a reply that they did not raise in their opening brief. But this general rule does not prevent a movant from responding to arguments made in an answering brief.[56] That is the whole purpose of a reply.

The point of the rule is to prevent sandbagging, not to require movants to anticipate their opponents' arguments. Oekos may have known Acme's position from prior briefing; however, that does not alter the Court's approach here. Acme may have decided to develop new legal arguments after seeing the Magistrate's ruling. If Oekos was required to brief based on Acme's old position, it may have wasted time on nonexistent issues.

## B. THE COURT FINDS THAT THE LEASE IS A SEVERABLE CONTRACT

A cause of action for breach of contract accrues when the contract is broken.[57] The parties agree that a three-year statute of limitations applies here. The complaint alleges that Oekos miscalculated the rent increase in 2015.[58] The suit was initially brought in 2022. Thus, on the face of the Complaint, Acme's suit appears to be barred by the statute of limitations.

"When a complaint asserts a cause of action that on its face accrued outside the statute of limitations … the plaintiff has the burden of pleading facts leading to a reasonable inference that" the contract is continuous or severable[59] If the plaintiff bears their burden of pleading a continuous or severable contract, there may be factual issues preventing determination at the motion to dismiss stage.[60]

---

[56] *Wilmot v. Marriott Hurghada Mgmt., Inc.*, 2016 WL 2599092, at *4 (D. Del. May 5, 2016) ("Typically, the court disregards newly-raised arguments; however, arguments in a reply brief responsive to positions and new information raised in an opposition brief do not violate D. Del. LR 7.1.3(c)(2).").
[57] *Davis, Bowen & Friedel, Inc. v. Disabatino*, 2016 WL 7469691, at *4 (Del. Super. Dec. 27, 2016)
[58] Compl. ¶ 29.
[59] *Palisades Collection, LLC v. Unifund CCR Partners*, 2015 WL 6693962, at *6 (Del. Super. Nov. 3, 2015).
[60] *E.g., Smith v. Mattia*, 2010 WL 412030, at *4 (Del. Ch. Feb. 1, 2010). *But see Guerrieri v. Cajun Cove Condo. Council*, 2007 WL 1520039, at *6 (Del. Super. Apr. 25, 2007) (no factual issue existed in determining continuous contract).

For a continuous contract, the statute of limitations begins to run only when full damages can be ascertained and recovered.[61] The continuous breach doctrine is narrow and only applied in unusual circumstances.[62] The doctrine applies where the alleged wrongful acts are so "inexorably intertwined that there is but one continuing wrong."[63] Similarly, if a party is able to allege "a prima facie case for breach of contract after a single incident, the doctrine does not apply, even if a defendant engages in numerous repeated wrongs of a similar … character over an extended period."[64]

For a severable contract, the statute of limitations begins to run on each severable portion when a party breaches that portion of the contract.[65]

The Complaint does not allege any facts to allow the Court to draw a reasonable inference that the lease is a continuous contract. A commercial lease is not an unusual circumstance that warrants the application of this doctrine. And Acme could have asserted a *prima facie* case for breach of the Lease after the initial miscalculation in 2015. Accordingly, the doctrine does not apply. Adopting Acme's theory could eliminate the statute of limitations for these types of leases. Under this theory, if a lease called for unlimited optional extensions, no cause of action would ever be tolled.

The Complaint does allege that the Lease, as amended by the Letter Agreement and the Second Letter Agreement, provided Acme with several optional renewals.[66] Generally, a provision in a lease providing the lessee with an optional renewal is a separate option contract.[67]

---

[61] *Id.*
[62] *Id.*
[63] *Ocicum Biosolutions (India) Ltd. v. AstraZeneca UK Ltd.*, 2019 WL 6726836, at *15 (Del. Super. Dec. 4, 2019).
[64] *Id.*
[65] *Disabatino*, 2016 WL 7469691, at *4.
[66] Compl. ¶¶ 28, 45.
[67] Corbin on Contracts § 11.10 (2021) ("The option may be one for renewal of the lease on stated terms (instead of, or along with, an option to purchase); such an option is supported and made irrevocable by the lessee's promise to pay rent….").

10

Here, the Lease expressly provided for two optional terms, the 2015 Term and the 2020 Term. The terms are distinct, and the Calculation (i.e., the Revised Calculation) provided a formula to determine the rent for each term, should the tenant exercise its right to extend. Because the rental amount and due date for such rent was defined precisely for the 2015 Term, irrespective of the 2020 Term, the tenant could have alleged a *prima facie* claim for breach or declaratory judgment in 2015 when Oekos (mis)calculated the rental increase and A&P began paying the same (May 1, 2015). Thus, the time to bring a claim arising from that breach accrued on May 1, 2015 and the statute of limitations expired May 1, 2018.[68] Under that same rationale, however, the 2015 Term and 2020 Term were severable such that Acme may still challenge the (mis)calculation for the 2020 Term, which happened less than three (3) years before this action was filed.

Therefore, Acme has carried its burden by pleading facts that create a reasonable inference that the Lease is a severable contract for each renewal term.

Accordingly, Acme has carried its burden to plead that the Lease is a severable contract comprising the 2015 term and the 2020 term. Thus, Claims related to the 2015 option term are time barred, and claims related to the 2020 option term are not.

---

[68] This period may be imposed against the Plaintiff as assignee to A&P. *See Madison Fund, Inc. v. Midland Glass Co., Inc.*, 1980 WL 332958, at *2 (Del. Super. Aug. 11, 1980) (explaining the "rudimentary principle of contract law" that "defenses such as the statute of limitations may be interposed against the assignee if it was available against the assignor"). I find the Plaintiff's case law inapposite. *See Matter of Burger*, 125 B.R. 894 (Bankr. D. Del. 1991); *Smith v. Mattia*, 2010 WL 412030 (Del. Ch. Feb. 1, 2010); *Bridgestone/Firestone, Inc. v. Cap Gemini Am., Inc.*, 2002 WL 1042089 (Del. Super. May 23, 2002).

## V.    CONCLUSION

Now, therefore, it is ordered, as set forth above, that the Motion to Dismiss is

**GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

July 31, 2025
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, President Judge

cc:    File&ServeXpress